EGGEBEEN *v.* RED TOP CAB COMPANY OF GRAND RAPIDS.

1. Automobiles—Emergency Vehicles—Due Care.
   The driver of an emergency vehicle, such as an ambulance, is not relieved of the duty to drive with due regard for the safety of others (PA 1949, No 300, §§ 632, 653).

2. Trial—Nonjury Cases—Weight of Evidence.
   A trial judge who tries an action at law without a jury is the trier of the facts and may give such weight to the testimony as it is entitled to have in his opinion.

3. Appeal and Error—Finding of Court—Preponderance of Evidence.
   A finding of the trial judge who tried case without a jury will not be reversed unless the evidence clearly preponderates in the opposite direction.

4. Same—Examination of Evidence in Nonjury Case.
   Record of evidence from which findings of fact were made in a nonjury action at law is examined by Supreme Court in order to determine whether or not it preponderates in the opposite direction.

5. Automobiles — Ambulances — Contributory Negligence — Evidence—Intersections.
   Plaintiff's ambulance driver was not guilty of contributory negligence as a matter of law, where there is evidence that at a speed of 10 to 15 miles an hour and with siren sounding while on an emergency run, he entered a clear intersection in the right-hand lane from the south after observa-

---

References for Points in Headnotes
[1, 5, 6] 5 Am Jur, Automobiles §§ 40, 89, 294, 298; 25 Am Jur, Highways §§ 217, 219.
[1, 5, 6] Right-of-way of fire apparatus, et cetera, at street or highway intersections. 21 ALR 978; 37 ALR 500; 47 ALR 601.
Applicability of motor vehicle regulations to public officials or employees: 19 ALR 459; 23 ALR 418.
Right-of-way of vehicle carrying policeman. 65 ALR 140.
[2] 53 Am Jur, Trial § 1123.
[3, 4] 3 Am Jur, Appeal and Error § 896 *et seq.*

tion made at a point 10 feet or so south of the south curb line of street on which defendant's eastbound taxicab had stopped and waited for traffic light to turn in his favor and that the collision occurred in the northeast portion of the intersection in midafternoon on a wet, slushy midwinter day (PA 1949, No 300, §§ 632, 653).

6. SAME — AMBULANCES — TAXICABS — INTERSECTIONS — NEGLI-GENCE—PROXIMATE CAUSE—EVIDENCE.

Evidence as to eastbound defendant taxicab driver's negligence *held*, sufficient to permit trial court finding him guilty of negligence proximately causing collision with northbound ambulance in midafternoon of midwinter day in northeast portion of intersection, notwithstanding cab driver started up when traffic light turned in his favor, that radio in taxicab was operating and most of its windows closed, where there is evidence that red dome light of ambulance was visible for several blocks, that its siren was sounding and it was traveling at speed of 10 to 15 miles an hour (PA 1949, No 300, §§ 632, 653).

Appeal from Kent; Brown (William B.), J. Submitted June 5, 1952. (Docket No. 39, Calendar No. 45,461.) Decided September 4, 1952.

Case by Anton Eggebeen, Jr., and others against Red Top Cab Company, a Michigan corporation, for damages resulting from automobile accident. Judgment for plaintiffs. Defendant appeals. Affirmed.

*Mitts & Smith,* for plaintiffs.

*Uhl, Bryant, Slawson & Wheeler,* for defendant.

SHARPE, J. This case came to us as a result of a collision between a taxicab owned by defendant company and an ambulance owned by plaintiffs. The collision occurred in the intersection of Division and Fulton streets in the city of Grand Rapids, on January 27, 1951, at or about the hour of 3 p.m. The

ambulance was proceeding in a northerly direction on Division street. Its driver was taking a patient to the hospital, and as it approached Fulton street its siren was sounding in an oscillating manner. The taxicab was proceeding in an easterly direction on Fulton street, had stopped before entering the intersection. The intersection is controlled by traffic lights. When the traffic light changed to green for Fulton street traffic, the taxicab entered the intersection with the green light in its favor. The collision between the 2 vehicles occurred in the northeast corner of the intersection.

The damage to the ambulance was $675.01, of which plaintiff insurance company paid $575.01, and has taken an assignment in such amount from plaintiffs, and as such is a party plaintiff.

The cause came on for trial, and at the conclusion of plaintiff's proofs the defendant made a motion for "judgment of no cause of action" for the reason that plaintiffs were guilty of contributory negligence because its driver entered the intersection against the red light. The motion was denied. At the close of all proofs the trial court granted plaintiffs, Anton Eggebeen, Jr., and Jean Eggebeen, a judgment in the amount of $100 and plaintiff insurance company a judgment in the amount of $575.01.

The trial court, at the close of all proofs, gave an opinion, a part of which reads as follows:

"So, without attempting to go into a detailed review of what each witness testified to, I will say the testimony in this case shows clearly and competently and preponderantly that the driver of this ambulance was exercising a high degree of care, and I would say commensurate with the responsibility that he has in operating this ambulance; and it seems to me the driver of this taxi must have heard it. I think he must have heard this siren. As the ambulance was approaching with its siren sounding

30 or 40 feet south of this intersection, when the man in the taxi saw it or heard it first he certainly could have stopped before he got into the middle of South Division street.   Certainly he could have stopped and given the ambulance right-of-way. * * * I would say that the driver of this taxi was careless, which is commonly called negligent, in the way in which he started up his taxi to be sure to get to that fellow he was going to take for a ride."

Defendants appeal and urge that plaintiff's driver was guilty of contributory negligence in entering the intersection against the red light.   Plaintiffs rely on the following statutory provisions:

"(a) Upon the immediate approach of an authorized emergency vehicle equipped with at least 1 lighted lamp exhibiting red light visible under normal atmospheric condition from a distance of 500 feet to the front of such vehicle and when the driver is giving audible signal by siren, exhaust whistle, or bell:

"1. The driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to and as close as possible to, the right-hand edge or curb of the roadway clear of any intersection and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer. * * *

"(b) This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway."   PA 1949, No 300, § 653 (CL 1948, § 257.653 [Stat Ann 1949 Cum Supp § 9.2353]).

"The speed limitation set forth in this chapter shall not apply to vehicles when operated with due regard for safety under the direction of the police in the chase or apprehension of violators of the law or of persons charged with or suspected of any such viola-

tion, nor to fire department or fire patrol vehicles when traveling in response to a fire alarm, nor to public or private ambulances when traveling in emergencies. This exemption shall not however protect the driver of any such vehicle from the consequences of a reckless disregard of the safety of others." PA 1949, No 300, § 632 (CL 1948, § 257.632 [Stat Ann 1952 Rev § 9.2332]).

In *City of Kalamazoo* v. *Priest,* 331 Mich 43, we had occasion to consider a similar statute. We there held that the driver of an emergency vehicle is not relieved of the duty to drive with due regard for the safety of others. The trial court found as a fact that the driver of the ambulance was exercising a high degree of care commensurate with his responsibility in operating an ambulance. In *Vannett* v. *Michigan Public Service Co.,* 289 Mich 212, we said:

"We have repeatedly said in cases tried without a jury that the trial judge is the trier of the facts and may give such weight to the testimony as in his opinion it is entitled to. In such cases we do not reverse unless the evidence clearly preponderates in the opposite direction."

See, also, *Lather, for use and benefit of Employers Mutual Casualty Company, Inc.,* v. *Michigan Public Service Co.,* 332 Mich 683.

In determining whether the evidence clearly preponderates against the finding of fact of the trial court, we find it necessary to examine the testimony from which such findings were made.

It is undisputed that the driver of the ambulance was engaged in an emergency run; that in addition to the siren, the ambulance was equipped with a red dome light visible for 4 blocks over intervening traffic; that Division street is approximately 54 feet wide and has 4 lanes of traffic, 2 for northbound traffic and 2 for southbound traffic; that some snow

had fallen and the streets were sloppy and wet; that Fulton street has a width of 45 feet from curb to curb, and that the collision occurred in the northeast part of the intersection. There is testimony from which the court could find that, as the ambulance entered the intersection, all traffic on all 4 sides of the intersection stopped for the ambulance, with the exception of the taxicab. Ned Shaw, the driver of the ambulance, testified:

"I entered Division avenue on Franklin street and drove on Division to Fulton where the accident happened. The siren was going all of the time, oscillating to bring it to a high pitch, coast down a little and bring it up again so traffic can hear it. It never stopped completely during that run.

"I was driving 25 to 30 miles an hour during the trip from Franklin to Fulton. Traffic for a distance of 3 blocks from Fulton street was heavy enough to necessitate maneuvering in and out from the right to the left and then as we got toward the intersection of Fulton street it was heavy there. The oncoming traffic had pulled over into the lanes, and the traffic traveling in my direction was heavy enough that I maneuvered back and forth on my right side of the street. The weather was clear. The pavement was wet and slippery, probably covered with thin ice or thin film.

"As I was pulling up to the intersection the signal was changing from the green to amber and at that I slowed up my speed and traffic itself was stopped, for traffic coming from the west, going west, that had stopped, and also traffic on the east; northbound traffic was at a stand-still, and I proceeded into the intersection. I was on the crosswalk when the light changed to red for Division. I was still looking around. I looked to my right and left. I saw vehicles stopped on both sides. There were lines of traffic on both sides that were stopped. As I entered the intersection I was going about 10 miles an hour, 10 to 15. I at that time after making obser-

vation formed a judgment that it was safe to go on through. As I came into the intersection when it was clear why just out of no where, the taxicab; I tried to pull to the right after I saw him; I tried to pull right with him but it was too late then. The taxi appeared from my left. He came from the west going east. I don't know whether he was north or south of traffic that was stopped there. I do know there were other cars waiting as he came through, because I never saw him until I saw him sliding into the intersection itself. Then the 2 vehicles collided. He hit me on the left front fender. I was still headed north at that time. He was headed east. When the impact occurred the ambulance was midway, little past the midsection of the intersection. After the impact it went towards the curb, that would be on the northeast corner. I was still facing north when I came to a stop. I was right over at the east curb. * * *

"I was at the south curb line on Fulton street when my eyes got around north of the 2 cars that were waiting there. I would say I was about 10 feet from the curb line when my vision was clear for the whole intersection. I was about 10 feet or so south of the curb line when my eyes passed those 2 cars. At that time I looked west and I looked east. I also looked north, in other words my head was just in that motion. I looked to the east first. Then I looked to the west. I saw traffic was stopped, that the westbound traffic was stopped and waiting; that the eastbound traffic was stopped and waiting. Then I proceeded north into the intersection. * * *

"There are buildings along the west side of Division avenue, south of Fulton street and on the south side of Fulton street west of Division avenue. These buildings are built right up to the sidewalk and are continuous. They interfere with the view of traffic going north on Division and traffic going east on Fulton."

Richard Twelvetrees, a witness for plaintiff, testified as follows:

"I was a witness to the accident on January 27th at Division and Fulton streets. I was in my automobile first in line headed west on Fulton street at Division. I heard the siren of the ambulance several seconds before the ambulance came into view. The ambulance came into sight a few feet from the corner. The streets were kind of sloppy. It was wet. It was not raining or snowing that I recall. I had stopped for the red light originally. The light then changed to green for Fulton street traffic. When the light changed from red to green for Fulton street traffic the ambulance was just a little ways from the corner, not quite to the corner, and I estimated its speed at 10 to 15 miles an hour. As the light changed from red to green for Fulton street traffic I remained standing there to let the ambulance pass."

Mrs. Viola White, a witness for plaintiff, testified:

"I was in the front seat of the ambulance by the side of the driver. My son's wife was a patient in the rear of the ambulance. * * *

"The ambulance driver appeared to slow down when approaching the intersection and take things in view generally. The vehicle slowed down. The taxicab was on Fulton street, facing east, and the Greyhound bus on the east side of Fulton, going west, both waiting for the traffic light to change. The light turned red as we entered the intersection. I observed the taxicab start up, he had the green light and he started into the intersection. When the taxicab drove into the intersection we were well into the intersection; the front part was beyond the center."

We have carefully examined the evidence produced on the part of the defendant, and conclude that there is evidence from which the trial court could find that plaintiff's driver was driving with due regard to the

safety of others. It follows that he was not guilty of contributory negligence as a matter of law. The trial court found that the driver of the taxicab was careless and negligent. There is evidence to sustain this finding of fact. The ambulance was equipped with and was operating its siren and red light; all cars were stopped. Under such conditions the driver of the taxicab should have heeded the warning given by the ambulance. The trial court was correct in refusing to grant defendant's motion for a directed verdict, as there was evidence from which the court could have found that the negligence of the driver of the taxicab was the proximate cause of the accident.

When this motion was renewed at the close of all proofs, the court had the benefit of the testimony of Lewis Rounds, the driver of the taxicab, who testified that the radio in his cab was on, that all windows were up except the window on the left of the driver's seat, which had an opening of about an inch for ventilation; that when he first saw the ambulance it was 30 to 40 feet south of the intersection; that he was in low gear, traveling at a speed of 7 or 8 miles per hour and could stop his cab within a distance of approximately 15 feet. In our opinion the evidence produced by plaintiffs is such that the trial court could find that the negligence of the driver of the taxicab was the proximate cause of the collision. Other questions have been raised by defendants, but none of them are determinative of any material issues.

The judgment of the trial court is affirmed, with costs to plaintiffs.

DETHMERS, BUTZEL, CARR, BUSHNELL, BOYLES, and REID, JJ., concurred.

The late Chief Justice NORTH did not sit.