MEYERS *v.* FORT.

1. APPEAL AND ERROR—NONJURY CASES—SLANDER—EVIDENCE—FIND-
ING OF FACT.

The trial judge's finding of fact in a nonjury slander case is
not disturbed by the Supreme Court, where the evidence, based
upon his opportunity to see the witnesses and listen to their
testimony, does not clearly preponderate in the opposite di-
rection and justified the finding made.

2. LIBEL AND SLANDER—IMMORAL CONDUCT—SPECIAL DAMAGES.

No special damages need be shown when slander consists of a
charge of immoral conduct as such a slander is actionable
per se.

3. SAME—IMMORAL CONDUCT—EVIDENCE.

It was not error in action for slander based on a charge of im-
moral conduct involving sex for court to refuse to allow
defendant to show unrelated, previous acts of plaintiff, such
as coming to work under the influence of liquor and that plain-
tiff had become pregnant and suffered a miscarriage while
unmarried.

4. SAME—ISSUES.

There can be only 2 issues in an action of slander, (1) publica-
tion and (2) justification, and where there is no justification,
there may be matters of mitigation but they are not put in
issue as they form no absolute defense.

5. SAME—TRIAL—IMPARTIALITY—NONJURY CASE—EVIDENCE.

Record in nonjury slander case *held,* not to disclose that trial was
carried forward in an atmosphere that disclosed a lack of
judicial calm and impartiality, notwithstanding there was a
very definite difference of opinion between the trial court and
defendant's attorney as to what was and what was not proper
evidence and court made certain statements in regard to such
difference of opinion.

REFERENCES FOR POINTS IN HEADNOTES

[1, 5] 3 Am Jur, Appeal and Error §§ 954, 1037.
[2] 33 Am Jur, Libel and Slander § 35 *et seq.,* § 243.
[3] 33 Am Jur, Libel and Slander § 252 *et seq.*

Appeal from Wayne; Neuenfelt (Lila M.), J. Submitted October 4, 1955. (Docket No. 2, Calender No. 46,481.) Decided December 28, 1955.

Case by Sylvia Meyers against Letha Fort for damages arising from slander. Judgment for plaintiff. Defendant appeals. Affirmed.

*Earl D. Leader,* for plaintiff.

*Stanley E. Beattie,* for defendant.

KELLY, J. This is an appeal from a $500 judgment, for plaintiff, in a slander case. The case was tried in Wayne county without a jury.

Plaintiff is a white woman and, at the time of accusation, was married. Defendant is a colored woman and separated from her husband. Mr. Hughes Caldwell is also colored, and a married man. All 3 work at the Chrysler factory in Detroit.

Plaintiff alleged that the slander consisted in defendant's statement to various people that she had observed plaintiff kissing Hughes Caldwell, and further that plaintiff had asked defendant for the use of her apartment for immoral purposes.

Question 1: *Does the record support the judgment?*

Plaintiff testified and called 3 witnesses in her behalf. Plaintiff's witness Mildred Kellock, a steward at the plant, testified that the defendant told her she had observed plaintiff kissing Caldwell. She testified:

"Not long after it happened it came up in discussion which it has been discussed a lot in the plant pro and con but Letha says she told the truth. That's what she has told me because Sylvia has asked me many times if Letha would apologize she would drop the case because being their chief steward they both

came to me and I told Letha what Sylvia has said and Letha would not apologize because she said she wasn't lying, she told the truth, and she would not apologize because that would make a liar out of her.

"*Q*. When was the occasion she told you this the first time?

"*A*. After the suit came up.

"*Q*. She never told you before that?

"*A*. No."

In regard to the apartment incident, this witness stated:

"She did not make any remarks to me concerning using her apartment. She did not make any remarks to me in relation to the foreman. As to whether she never made that remark, I heard it discussed amongst people. I didn't hear it from Letha. There has been considerable discussion about it in the plant."

Hughes Caldwell, plaintiff's witness, denied the kissing charges made by the defendant.

Plaintiff's witness Lucille Tellier, an employee at the plant, testified that plaintiff and defendant left the work table at the same time and when they came back defendant said to plaintiff: " 'Catherine and I saw you kissing in the stairway.' " She offered no testimony in regard to the apartment incident.

Plaintiff testified:

"I never did kiss Hughes or have anything to do with him or go out on any dates with him."

In regard to the apartment incident, plaintiff said:

"*Q*. On about Monday, June 29, 1953, a few days after this last remark she made that you were kissing Hughes, did she make any other remarks to you?

"*A*. Something about whorehouse.

"*Q*. What was it she said?

"*A*. I don't know how she said it but she said, 'You are trying to make a whorehouse out of my apart-

ment,' although she has asked me to go there many a time.

"*The Court:* She said what?

"*A.* 'Trying to make a whorehouse out of my apartment.'

"*Q.* (*By Mr. Leader*): She said that to you?

"*A.* Yes.

"*Q.* That was about when?

"*A.* Sometime in June.

"*Q.* Was that in the presence of other employees?

"*A.* Yes.

"*The Court:* Who was present?

"*A.* Lucille was there, Lucille Tellier was there, she heard it and other girls in the spray booth heard it."

Plaintiff testified that she had her lawyer write defendant asking defendant to stop spreading the slanderous statements, but that after receiving the letter the defendant continued to spread the slanderous rumors.

Defendant entered a plea of truth and offered evidence tending to prove truth.

Defendant's witness Theresa G. Boyle testified that in October, 1951, she heard plaintiff ask defendant for the use of her apartment; that the following week she had a conversation with plaintiff wherein plaintiff informed her "that she had taken her boy friend to her own home and her husband came home unexpectedly and almost caught her."

Catherine Billingsley was examined by the court. She testified:

"As to whether I remember the date in question when this episode came up, I don't remember the date but I know it happened. I was with Letha. As to telling you just what I saw, well, I saw this girl sitting here and that fellow over there. They was coming up the stairs and they were together and they were very close together. What they did I don't know.

"*Q.* You didn't see them kiss each other?

"*A.* When 2 people get close together you don't know what is happening.

"*Q.* They were right in front of you. You have eyes in your head. What did you see?

"*A.* Well, he kissed her.

"*Q.* Did you see him kiss her?

"*A.* Sure. * * *

"*The Court:* Now you know definitely they kissed each other?

"*A.* Well, when they get close together that's what they did.

"*The Court:* Are you just guessing because they were close together or did you see them?

"*A.* I saw them.

"*The Court:* What else did they do then?

"*A.* That's all.

"*The Court:* Was it a long kiss or a short one.

"*A.* No.

"*The Court:* Which was it?

"*A.* Short.

"*The Court:* Did they stop on the stairway or continue walking up the stairs?

"*A.* Just for a few minutes."

In regard to the $500 judgment, appellate contends that plaintiff showed no actual damage and only claimed damages because of injury to her good reputation and, also, that the utterances of defendant caused her husband to divorce her.

This Court has held that where the trial judge has the opportunity to see the witnesses and listen to their testimony, and the controlling issue is one of fact, in cases tried by the court without a jury, this Court will not reverse unless the evidence clearly preponderates in the opposite direction. *Nagy* v. *Balogh*, 337 Mich 691; *Allen* v. *Grand Trunk Western Railroad Co.*, 334 Mich 104. We do not believe that the evidence in this case clearly preponderates in the opposite direction, and, therefore, find that the

trial judge was justified in finding for the plaintiff.

In regard to the testimony sustaining the $500 damages, this Court has held in *Newman* v. *Stein,* 75 Mich 402 (13 Am St Rep 447), and in *Pfeiffer* v. *Haines,* 320 Mich 263, that in cases of this kind no special damages need be shown because when the slander consists of a charge of immoral conduct it is actionable per se.

Question 2: *Is appellant correct in her contention that the court erred in rejecting certain evidence of witness Boyle and the court file in regard to a previous divorce action in which plaintiff was a party 10 years prior to this case; and further, was this case tried in an atmosphere that discloses a lack of "judicial calm and impartiality"?*

An examination of the record discloses that the court did not err in this regard. The court refused to allow testimony in regard to specific acts of the plaintiff, such as coming to work at various times under the influence of liquor. The court refused defendant's offer of proof that the witness Theresa G. Boyle would testify that the plaintiff told her that she had become pregnant and had suffered a miscarriage, but did not know by what man she had become pregnant, and that all this happened at a time when plaintiff was unmarried. The court was correct in denying to defendant the right to offer said proofs.

In *Proctor* v. *Houghtaling,* 37 Mich 41, 45, this Court stated:

"In an action of slander there can only be 2 issues, —one of its publication and the other of its justification. Upon the trial, where there is no justification, there may be matters in mitigation, but these are not put in issue because they form no absolute defense.

"It would be very dangerous to allow issues to be made on the trial concerning specific acts of the plaintiff, or specific rumors, or charges against her

not going to the direct issue in the cause. She could have no means of defense against malicious fabrications which are by no means unusual in such cases, and the reputation of the purest persons could easily be ruined or damaged by allowing free scope to such testimony. As has often been remarked, the general reputation of anyone may be expected to be within the knowledge of attainable witnesses at all times, but it would be impossible to be prepared for all the particular slanders which perjured and malicious witnesses might invent. A large mass of such rubbish has been introduced into this case, without any respectable authority to maintain its reception. The practice is not to be commended."

This Court cannot agree with appellant that she was denied a fair trial, or that the record proves that the trial was carried forward in an atmosphere that disclosed a lack of "judicial calm and impartiality."

The record discloses that there was a very definite difference of opinion between the trial court and the attorney for the appellant in regard as to what was and what was not proper evidence and the court made certain statements in regard to this difference of opinion. But the case was tried without a jury, and we find no reversible error.

Affirmed, costs to appellee.

CARR, C. J., and BUTZEL, SMITH, BOYLES, REID, and DETHMERS, JJ., concurred with KELLY, J.

SHARPE, J., concurred in the result.