MEIER v. HOLT.
TOTH v. SAME.

1. AUTOMOBILES—NEGLIGENCE—EVIDENCE—WRONG SIDE OF ROAD.
    Defendant westbound motorist established his own negligence,
      where he went into south lane on foggy morning in attempting
      to pass 2 trucks he had overtaken and collided with plaintiffs'
      eastbound car.

2. SAME—SPEED—STOPPING.
    Evidence that defendant eastbound motorist collided with plain-
      tiffs' car which had proceeded in same direction until it had
      previously collided with a car going in opposite direction be-
      cause defendant motorist was going too fast to stop on foggy
      morning when he saw plaintiffs' car established negligence of
      such defendant (CLS 1954, § 257.627[a]).

3. SAME—CONTRIBUTORY NEGLIGENCE.
    Plaintiff eastbound motorist was properly found free from con-
      tributory negligence, where evidence shows first collision oc-
      curred on south lane as defendant westbound motorist was
      attempting to overtake and pass 2 westbound haulaway trucks
      on foggy morning and defendant eastbound motorist thereafter
      collided with plaintiff's car.

4. SAME—NEGLIGENCE—PROXIMATE CAUSES.
    The negligence of a westbound motorist in colliding with plain-
      tiffs' car while on his wrong side of highway would not pre-
      vent recovery from eastbound motorist who subsequently col-

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3]  5A Am Jur, Automobiles and Highway Traffic §§ 215, 500.
[2]  5A Am Jur, Automobiles and Highway Traffic §§ 30–42, 286–292.
[3]  5A Am Jur, Automobiles and Highway Traffic §§ 368–373.
[4]  5A Am Jur, Automobiles and Highway Traffic § 236 et seq.
[5, 6, 10–12]  38 Am Jur, Negligence § 64.
[7, 9]  15 Am Jur, Damages §§ 20, 23.
[8]  15 Am Jur, Damages § 65 et seq.
[10]  38 Am Jur, Negligence § 344 et seq.
[11]  38 Am Jur, Negligence § 285 et seq.

lided with plaintiffs' car because unable to stop after seeing
the collided cars, since there may be and were 2 proximate
causes of plaintiffs' injuries (CLS 1954, § 257.627[a]).

5. NEGLIGENCE—SUCCESSIVE TORT-FEASORS.

The rule as to liability for tort with respect to joint or con-
current negligence causing a single injury is inapplicable,
where 2 tort-feasors inflicted injury to plaintiffs successively.

6. SAME—SUCCESSIVE TORT-FEASORS—LIABILITY FOR DAMAGES.

A second tort-feasor who inflicts injuries to a plaintiff who had
been previously injured by a first tort-feasor is liable only
for the injuries caused by such second tort-feasor's negligence.

7. DAMAGES—RECOVERY NOT DENIED BY DIFFICULTY IN MEASURE-
MENT.

A plaintiff's right to recover damages in a tort action will not
be denied because of difficulty of accurately measuring his
damages or ascertaining the amount thereof with certainty.

8. SAME—TORTS—MEASURE OF DAMAGES.

The law requires no more proof of the amount of a plaintiff's
damages in a tort action than the nature of the case will per-
mit and it is enough if the evidence shows the extent of the
damages as a matter of just and reasonable inference, even
though the result be only approximate, since it is then com-
petent for the trier of the facts to form such reasonable and
probable estimate of the damages as in the exercise of good
sense and sound judgment will produce adequate compen-
sation.

9. SAME—UNCERTAINTY AS TO LIABILITY, AMOUNT OF DAMAGES.

The rule which precludes the recovery of uncertain damages
applies to such as are not the certain result of the wrong, not
to those damages which are definitely attributable to the
wrong and only uncertain in respect to their amount.

10. NEGLIGENCE — LIABILITY OF SECOND TORT-FEASOR — EVIDENCE —
QUESTION FOR TRIER OF FACTS.

If there is competent evidence showing, or from which a rea-
sonable inference may be drawn, that the negligence of the
second tort-feasor was a proximate cause of plaintiffs' injuries
or any part or aggravation of them, that evidence should go
to the trier of the facts for determination, no matter how
difficult, of that question of fact, and whether there is such
evidence to go to the trier of the facts is not a question of
fact for the jury, but of law for the court.

11. SAME—SECOND TORT-FEASOR—EVIDENCE—BURDEN OF PROOF.

To impose liability for damages for negligence upon a second tort-feasor there must be evidence from which the trier of the facts can properly find for the party producing it upon whom the burden is cast.

12. SAME—SECOND TORT-FEASOR—APPORTIONMENT OF DAMAGES.

Liability for damages to a plaintiff, inflicted by successive tort-feasors, should be apportioned so as to impose upon the second tort-feasor the amount and proportion, if any, proximately caused by him.

BOYLES, J., dissenting in part.

Appeal from Washtenaw; Breakey (James R., Jr.), J. Submitted April 10, 1956. (Docket Nos. 48-51, Calendar Nos. 46,583-46,586.) Decided December 28, 1956. Rehearing denied May 17, 1957.

Case by Frank Meier against Joseph W. Holt and another for personal injury damages arising from multiple automobile collision. Similar actions by Margaret Toth, Stephen Toth, Jr., and Stephen Toth and the National Fire Insurance Company, his subrogee, for personal injury and property damage. Four actions consolidated for trial and appeal. Judgments for plaintiffs. Defendant Holt appeals. Reversed and remanded as to appellant.

*Ralph C. Keyes,* for plaintiffs.

*Burke, Burke & Ryan,* for defendant.

BOYLES, J. (*dissenting in part*). This is an appeal by defendant Joseph W. Holt from 4 separate judgments entered for 4 plaintiffs in consolidated cases tried by Judge Breakey in Washtenaw county without a jury. Each of the 4 plaintiffs, Frank Meier, Margaret Toth, Stephen Toth (and his insurance

carrier*), and Stephen Toth, Jr., a minor (by next friend), filed separate suits against defendants Joseph W. Holt and one Ray Caswell for damages resulting from the claimed negligence of both of said defendants in the operation of their 2 automobiles on the public highway. The suits having been occasioned by the same accident, in which the motor vehicles of both defendants were involved, these cases were consolidated for trial, after the pretrial hearing, but 4 separate judgments were entered by the court. Defendant Joseph W. Holt appeals. Defendant Ray Caswell has not appealed.

At the conclusion of the proofs the court filed a comprehensive opinion finding the facts, and entered judgments as follows: For Frank Meier, $5,000; for Margaret Toth, $8,500; for Stephen Toth, $4,-250;† and for Stephen Toth, Jr., $100. Each of the judgments was entered against both defendants, Ray Caswell and Joseph W. Holt, "jointly and severally."

While counsel for the respective parties in their briefs have added some facts extending the findings of fact in the opinion filed by the trial court, no complaint has been made as to their inaccuracy. We agree with the trial court that, in substance, the facts are as follows:

These cases arose out of 2 automobile collisions about 6 o'clock on the morning of May 15, 1946, on US–112 near Saline. The plaintiffs Stephen Toth, Stephen Toth, Jr., Margaret Toth, and Frank Meier

---

* Said insurance carrier filed a separate declaration claiming damages based on a subrogation assignment from Stephen Toth under his insurance policy. Objection having been raised that this was a void splitting of a cause of action, the court held that by the consolidation and by hearing the claims together, this did not result in a prejudicial splitting of the claim. In his brief appellant expressly abandons his claim that the plaintiff Stephen Toth had split his cause of action.

† In this same judgment, also $1,018.52 against the defendants, in favor of the plaintiff insurance carrier. This amount has not been questioned.

were in the Toth automobile being driven by Stephen Toth. The highway involved was 2-lane and paved, and Toth was in the south lane, going in an easterly direction. The atmosphere was foggy. Stephen Toth testified that he could see approximately 30 to 40 feet ahead, and had his lights on when he first saw the headlights of the Caswell car coming toward him, in his (Toth's) south lane of traffic, on the wrong (south) lane of the highway; that he (Toth) was on the right hand side of the highway; that there was other traffic proceeding west, while he (Toth) was proceeding east; that he (Toth) made a half turn of the steering wheel, stepped on the brake, could not judge how fast the oncoming (Caswell) car was traveling, that he (Toth) was traveling approximately 10 to 15 miles per hour; that the front end of the Toth car and the Caswell car collided and that the Toth car came to a stop crosswise of the highway; that the Toth car had sat there probably a half minute before another collision took place. The second collision was by the car being driven by defendant Joseph W. Holt, driving in an easterly direction, in the same direction as the plaintiffs' car. Defendant Holt testified that when he got approximately 20 feet from the Toth car which was across the highway, he first saw it; that he didn't stop, that he couldn't stop within the 20 feet. He was asked on cross-examination if there was nothing except the fog to interfere with his view ahead and he answered "That's right." He was further asked whether he was driving too fast to stop, and he answered "That's right."

Defendant Caswell testified that he was proceeding in a westerly direction on the highway and that the Toth car was 200 to 300 feet away when he first saw it. He testified that he (Caswell) went into the south lane attempting to pass some trucks which were "just crawling," westbound, when he first saw

the Toth automobile. He testified that he didn't know how fast he was traveling—that it wouldn't be any more than 25 miles per hour; that he could have put on the brakes and pulled in back of the trucks if he had thought, but that he decided to cross the highway; that he was afraid of a collision. He further testified, in substance, that the 2 haulaways —that is, the 2 trucks to which reference has been made—were close together; that he tried to get in between them and couldn't. Defendant Caswell, by admitting that he was in the wrong lane, that he had seen the Toth car 200 to 300 feet away (although it didn't have lights on, according to his claim), and that he tried to get in between the 2 trucks but couldn't make it, has established his negligence on his own testimony. However, he has not appealed from the judgments.

The testimony of the defendant Holt, that he was going too fast to stop when he saw the Toth car, is enough to establish his negligence.* There is no substantial testimony to show that the plaintiff driver was negligent and the court properly held that he was free from contributory negligence.

Where a law case has been tried by the court without a jury, we do not reverse the court's findings of facts unless the testimony clearly preponderates in the opposite direction. *Eggebeen* v. *Red Top Cab Company of Grand Rapids,* 334 Mich 490; *Meyers* v. *Fort,* 344 Mich 312. On our review of the record here, we agree with the trial court. The proofs support the court's conclusion that the defendant Holt was guilty of negligence which was one of the proximate causes of plaintiffs' injuries. *Waterstradt* v. *Lanyon Dock Co.,* 304 Mich 437.

Appellant challenges the joint and several judgments against him, claiming that even if his negli-

---

* CLS 1954, § 257.627(a) (Stat Ann 1952 Rev § 9.2327[a]).

gence were conceded, the negligence of defendant Caswell was the proximate cause of plaintiffs' injuries. Appellant relies on *Frye* v. *City of Detroit*, 256 Mich 466. However, if the proofs establish (as we find they do) that defendant Holt was guilty of negligence, under the circumstances shown, the negligence of Caswell would not prevent a recovery of damages against Holt. There could be, and were, 2 proximate causes of plaintiffs' injuries. *DeWitt* v. *Gerard*, 274 Mich 299; *Gleason* v. *Hanafin*, 308 Mich 31; *Brackins* v. *Olympia, Inc.*, 316 Mich 275 (168 ALR 890).

The only other question raised by appellant for reversal is that the judgments for Frank Meier, Stephen Toth and Margaret Toth were grossly excessive.

Frank Meier suffered a leg fracture requiring pegging and bone graft; the leg was in traction nearly 5 months, then required a steel brace for 6 months; he was hospitalized for 8 months, later had difficulty in walking, and lost over 1 year of work, during which time he suffered pain. Margaret Toth had 8 broken ribs, crushed chest, fractured elbow, permanent injury to elbow, was still being treated for injuries 6 years later, suffered considerable pain. Stephen Toth also suffered injuries about the face, head, eyes, requiring numerous stitches, his left hip was injured and he had a fracture of the wing of the left sacrum; he was on crutches for 3 months; suffered pain. The judgments were within the range of the proofs, and not excessive. *Denny* v. *Garavaglia*, 333 Mich 317; *Vink* v. *House*, 336 Mich 292; *Bennett* v. *Hill*, 342 Mich 754.

Judgments should be affirmed.

Black, J. (*concurring in reversal*). I agree that the trial judge did not err in finding defendant Holt guilty of actionable negligence. My inability to sign Mr. Justice Boyles' opinion as proposed stems from

the 8th paragraph thereof, the result of which is affirmance of judgments for all plaintiffs against both defendants for the total damage each plaintiff suffered as a result of both collisions. I think we should adhere to the first premise of *Frye*\*—that appellant Holt is responsible to the plaintiffs only for the consequences of his own tort—and that we should re-examine *Frye's* result with a view toward worthy answer of that plaguing question *Frye* and *DeWitt*† unitedly deposited in the trial offices of Michigan 2 decades ago.

For the sake of continued and convenient understanding, appellant Holt will henceforth be termed "the second tort-feasor."

*First:* Assuming but not conceding guilt of causal negligence on his part, the second tort-feasor contends on strength of *Frye* that there is no evidence in the record on which damages stemming from his tort may be assessed. Plaintiffs, on the other hand, contend that such second tort-feasor may and should be held for *all* of the damages shown in evidence. They rely, as the trial judge did, on Shearman & Redfield's rule (quoted in *Barkman* v. *Montague,* 297 Mich 538, 542; and *Gleason* v. *Hanafin,* 308 Mich 31, 38), *viz.,*

"Concurrent, as distinguished from joint negligence, arises where the injury is proximately caused by the concurrent wrongful acts or omissions of 2 or more persons acting independently. That the negligence of another person than the defendant contributes, concurs or cooperates to produce the injury is of no consequence. Both are ordinarily liable. And unless the damage caused by each is clearly separable, permitting the distinct assignment of responsibility to each, each is liable for the entire damage. The degree of culpability is im-

---

\* *Frye* v. *City of Detroit,* 256 Mich 466.—REPORTER.
† *DeWitt* v. *Gerard,* 274 Mich 299.—REPORTER.

material." (1 Shearman & Redfield on Negligence [6th ed], § 122, pp 317–319.)

Both contentions are wrong, in my view.

Shearman & Redfield's text, especially the last 2 quoted sentences, does tend toward support of plaintiffs' claim that the second tort-feasor may of right be held for the entire damages proven as having been suffered on account of the successive yet separated torts of the defendants. However, and on careful scrutiny of authorities cited by them in support, I find that the authors had in mind the instance of successive separate torts, proximately connected with a finally applied force the result of which finally applied force is "a single indivisible injury."* We have no such case presently before us—hence inapplicability of the quoted text.

Where, as here, the first tort-feasor separately causes the plaintiff to suffer an unknown or uncertain part or portion of the damages claimed by the latter, and the second tort-feasor separately causes that plaintiff to suffer the remainder of such claimed damages, the latter is responsible to such plaintiff only for the harm his tort has caused. Such is the rule to which Michigan has committed herself (*Albrecht* v. *St. Hedwig's Roman Catholic Benevolent Society,* 205 Mich 395; *Frye* v. *City of Detroit,* 256 Mich 466; *DeWitt* v. *Gerard,* 274 Mich 299; *DeWitt* v. *Gerard,* 281 Mich 676) and it fully accords with the declared views of Mr. Justice Cooley. He said:

"Although it is not always definitely so stated the rule seems to have become generally established that, although there is no concert of action between tort-feasors, if the cumulative effect of their acts is a single, indivisible injury, which it cannot cer-

---

* The "single indivisible injury" rule is considered, consistent with Cooley's herein quoted observations, in 5A Blashfield's "Cyclopedia of Automobile Law and Practice," §§ 3151, 3152, pp 109 and 114.

tainly be said would have resulted but for the concurrence of such acts, the actors are to be held liable as joint tort-feasors; whereas, if the results, as well as the acts, are separable, in theory at least, so that it can be said that the act of each would have resulted in some injury, however difficult it may be as a practical matter to establish the exact proportion of injury caused thereby, each can be held liable only for so much of the injury as was caused by his act." (1 Cooley on Torts [4th ed], § 86, pp 279, 280.)

*Second:* The difficulty is not so much with the rule as with its application. Before us is a typical case where innocent victims of successive torts are confronted with understandable difficulty in proving by direct testimony the extent and amount of damages they have suffered on account of the last tort. We are asked to listen to protest of the last wrongdoer that he is entitled to exculpatory judgments, as a matter of law, because he has succeeded in injuring each plaintiff to uncertain if not unknown extent. Let us test this argument.

We said, in *DeWitt* (274 Mich 299, 302):

"If the operator of the streetcar (the second tort-feasor) was guilty of negligence, causing injury to plaintiff, then defendant city is liable to respond in damages for the injuries inflicted by the streetcar.

"The burden is on plaintiff to show the specific injuries occasioned by the streetcar, for defendant city is not liable for any injuries occasioned by the automobile of defendant Gerard. *This may be difficult, but is an issue of fact for the jury.*"

It is said that *DeWitt* is distinguishable, both from *Frye* and the present case, in that (quoting from *DeWitt,* at page 301):

"A witness who saw plaintiff as he lay on the pavement on his left side after he was struck by the automobile testified that he saw no blood but that

as he lay under the streetcar his face was a 'mass of blood.' "

The Court did not note in its opinion that the same witness also testified, with respect to his failure to see blood as the plaintiff lay on the pavement prior to being struck by the streetcar, as follows:

"Q. So the left side of his face and the front of his face you could not see at all, could you?
"A. No.
"Q. So that if he had a cut in his left temple at that time you could not see at all, could you?
"A. No.
"Q. And if it were bleeding you would not know it, would you?
"A. No."

My purpose in pointing up the quoted testimony is to show that it is just as susceptible to inference that the cut (from which all bleeding was ultimately traced) may well have started to hemorrhage between blows without the fact being known or visible so far as the witness was concerned, and that the asserted distinction between *Frye* and *DeWitt*— which counsel for appellant advance with ability and vigor—is so tenuous as to suggest a more direct and forthright course.* I turn now to the latter.

---

* If we were disposed as in *DeWitt* to search for favorably-viewed threads of events occurring between the first and second collisions, such would be easy so far as concerns the claim of plaintiff Stephen Toth and his subrogee—also the claim of Mrs. Toth.

The first collision—of cars driven by Toth and Caswell—was head to head. This collision left the Toth car, with Mr. and Mrs. Toth still occupying it, crosswise on the highway with right side facing the direction of Holt's approach. The front end of Holt's car thereupon struck the right side of Toth's car. Mr. Toth thereafter found himself lying on the shoulder of the highway.

As to injuries inferably sustained by Mrs. Toth on account of the second collision, we find that the following statements taken from brief of her counsel are fairly sustained by the record:

"It was on the *right* side that Mrs. Toth was sitting. She sustained a serious and permanent injury to her *right elbow*; her *right chest* was crushed and 8 ribs were broken. That such injuries were not received in the first collision is inferable, at least, from the fact that

The *DeWitt Case,* on retrial (281 Mich 676), disclosed no further proof that the city's negligence caused a delineated portion of plaintiff's damages as claimed, yet this Court reaffirmed right of the triers of fact in that case to determine extent and amount, if any, of damages suffered by the plaintiff on account of the second blow. I think we should do likewise here and, at the same time, announce that *Frye* is modified to extent of holding that liability and extent of liability of the last tort-feasor, in cases where it is difficult if not impossible to show the specific damages his negligence has inferably caused, become questions of fact for the trier or triers of fact.

This does not mean that the question is always one of fact. Indeed, it is easy to conceive the case of chain vehicular pile-up where, as a matter of law, the last or next to last negligent motorist is shown as having caused no damage to the precedently injured plaintiff. We should hold, on the facts presented here, only that the parties are entitled to determination by the trier of facts of the amount of damages, if any be found by him, each plaintiff has apparently suffered on account of the second tort-feasor's negligence. To make it plain, the fact that the second tort-feasor's car collided with the one occupied by the plaintiffs and did so with some little violence, combined with the fact that each plaintiff was found injured thereafter, should bring into play the judicially-healthy rule I shall now consider.

The path for these cases was cleared many years ago by distinguished forefathers sitting here. But yesterday we quoted (*Ruediger* v. *Klink,* 346 Mich 357) the essence thereof from *Allison* v. *Chandler,* 11 Mich 542, 554–556. Once a tort is shown with in-

---

none of the usual injuries found after head-on collisions is present— they were all on her side, nearest the point of impact with Holt car." (Italics by counsel.)

ferential if uncertain resulting damage to the complainant at bar, the law requires no more in proof of that damage than the nature of the case will fairly permit; given that, the trier or triers of fact take over. Starting with *Allison,* and closely followed by *Gilbert* v. *Kennedy,* 22 Mich 117, our said forefathers gave to great writers upon the common law this special and needful rule of justice; that no guilty tort-feasor shall escape because he has succeeded in distilling, from his wrong, contention that the victim thereof is unable to prove with any certainty the injurious results of that wrong.

The history of Michigan's leadership in this field will be found in *Story Parchment Co.* v. *Paterson Parchment Paper Co.,* 282 US 555, 563 (51 S Ct 248, 75 L ed 544) (quoted in *Federal Gravel Co.* v. *Detroit & M. R. Co.,* 263 Mich 341, 357). Mr. Justice Sutherland, writing for the court, said:

"Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise." (Citing and analyzing cases including *Allison* v. *Chandler,* 11 Mich 542; and *Gilbert* v. *Kennedy,* 22 Mich 117.)

*Allison* summarizes this way (p 555 of report):

"The law does not require impossibilities; and cannot, therefore, require a higher degree of cer-

tainty than the nature of the case admits. And we can see no good reason for requiring any higher degree of certainty in respect to the amount of damages, than in respect to any other branch of the cause."*

*Gilbert* puts it this way (p 131 of report):

"There is no sound reason in such a case, as there may be, to some extent, in actions upon contract, for throwing *any part* of the loss upon the injured party, which the jury believe from the evidence he has sustained, though the precise amount cannot be ascertained by a fixed rule, but must be matter of opinion and probable estimate. And the adoption of any arbitrary rule in such a case, which will relieve the wrongdoer from any part of the damages, and throw the loss upon the injured party, would be little less than legalized robbery."

Turning finally to the ultimate substance of *Story* (p 562 of report), we may with propriety say this of the cases before us:

It is true that there was uncertainty as to the extent of damage suffered by the respective plaintiffs on account of the second tort-feasor's negligence, but none as to the prima facie fact of damage; and there is a clear distinction between the measure of proof necessary to establish the fact that each of these plaintiffs sustained some damage as a result of the second tort-feasor's negligence, and the measure of proof necessary to enable the trier of facts to fix the amount of such damage. *Story* concludes discussion this way (pp 565, 566 of report):

"The constant tendency of the courts is to find some way in which damages can be awarded where a wrong has been done. Difficulty of ascertainment is no longer confused with right of recovery."

---

\* That the foregoing rule applies to personal injury cases will be seen on examination of *Pawlicki* v. *Detroit United Railway,* 191 Mich 536, 540; and *Voss* v. *Adams,* 271 Mich 203.

*Story's* reasoning is pursued by Professor Prosser in the latest edition of his work on torts.* He says (Prosser on Torts [2d ed], § 45, p 229):

"The difficulty of proof in assessing such separate damages has received frequent mention in all these cases, but it is not regarded as sufficient justification for entire liability. The emphasis is placed upon the logical possibility of apportionment, and the separate invasion of the plaintiff's interests which may be traced to each cause. The difficulty may have been overstated. The courts necessarily have been very liberal in awarding damages where the uncertainty as to their extent results from the nature of the wrong itself."

What has been said means that enlightened courts cannot hear, above the victim's righteous prayer for relief, screams of the convicted wrongdoer that he is being hurt by the uncertainties of conjecture and speculation. It is enough to say that his wrong is the cause of the very uncertainty of which he complains and that he should bear the consequences in stoical silence. If we do not have sufficient courage to say just that, then the only remaining alternative—consistent with justice of course—is the one to which the supreme court of California has turned (*Summers* v. *Tice,* 33 Cal2d 80 [199 P2d 1, 5 ALR2d 91]; *Finnegan* v. *Royal Realty Co.,* 35 Cal2d 409 [218 P2d 17]), that of shifting the burden of proving apportionment of damages in these successive or simultaneous injury cases to the wrongdoer defendant or defendants.

*Third:* Lest there be too much fretful lamentation over the projected passing of *Frye's* rule of instructed absolution, reference is made to a separate

* For an exhaustive study of questions dealt with in present opinion, see that portion of Prosser's treatise, "Joint Torts and Several Liability" in 25 California Law Review 411, headed "Successive Injuries," commencing at page 434.

reason why the case no longer should be regarded as supporting a directed verdict in like instance. *Frye* involved successively sustained injuries and ultimate death. The decedent was definitely alive for an appreciable period following the second blow. *Frye's* cause was consequently planted on and complicated by the now extinct survival act.* *Frye's* measure of damages regardless of nominee or nominees for payment thereof would now be fixed by our present draft of Lord Campbell's act (CL 1948, §§ 691.581, 691.582 [Stat Ann §§ 27.711, 27.712]). Should the events shown in its record be repeated with review here, the case would present a new and special question, one that was absent when *Frye* came here in 1931 and is absent in this appeal of Holt (compare *Kolehmainen* v. *E. E. Mills Trucking Co., Inc.,* 301 Mich 340). The quoted rules of *Allison* and *Gilbert* may therefore be utilized despite *Frye* in cases of personal injury or property loss caused by separate torts.

The foregoing indicates full agreement with Mr. Justice BOYLES' observation that there can be, and were in each of the cases before us (on favorable view), 2 proximate causes of the injuries and damages shown in evidence. When we so affirm, however, our assigned work in these cases is not finished. We must, or at least should, reason out the legal extent of appellant Holt's liability to the respective plaintiffs. I have attempted so to do in the foregoing opinion.

Since the trial judge assumed to hold defendant Holt responsible for all damages claimed by such plaintiffs, distinguished from the portion Holt's negligence inferentially caused, I would reverse for partial retrial devoted to determination of the

* See notes at CL 1948, § 612.32 (Stat Ann 1955 Cum Supp § 27.684).—REPORTER.

amount of damages each plaintiff suffered, if any, on account of Holt's adjudged negligence.

The present judgments as against defendant Caswell should not of course be disturbed. Caswell, the first tort-feasor, has not appealed. Appellant Holt should recover costs of this appeal.

Dethmers, C. J. I concur in the view of Mr. Justice Boyles that the trial court was not in error in holding (1) that both defendants, Caswell and Holt, were guilty of negligence, (2) that plaintiffs were free from contributory negligence, (3) that defendant Caswell's negligence was a proximate cause of plaintiffs' injuries, and (4) that there can be 2 or more proximate causes of a single injury. That holding, however, is not, in my opinion, completely dispositive of the case because it leaves unanswered 2 controlling questions with respect to the liability of defendant Holt, the second tort-feasor, *i.e.*, (1) was there any competent evidence to be considered by the trier of the facts which tended to prove, inferentially or otherwise, that Holt's negligence was a proximate cause of plaintiffs' injuries or any part or aggravation of them, and (2) if so, is Holt liable for any greater proportion of plaintiffs' damages than the evidence shows resulted from his negligence as determined by the trier of the facts?

I agree with Mr. Justice Black that the questions of the second tort-feasor's liability and of the extent thereof in this case are not settled by the quotation from Shearman & Redfield* nor are they by the holdings in such cases as *Banzhof* v. *Roche,* 228 Mich 36; *Barkman* v. *Montague,* 297 Mich 538; *Gleason* v. *Hanafin,* 308 Mich 31; and *Brackins* v. *Olympia, Inc.,* 316 Mich 275 (168 ALR 890), to the effect that there may be 2 or more proximate causes of an injury

---

* 1 Shearman & Redfield on Negligence (6th ed.), § 122, pp 317-319.—Reporter.

and that recovery may be had for the full amount of plaintiff's damages against either one or both of 2 tort-feasors whose concurrent or successive torts were proximate causes of a single indivisible injury. This is not a case in which 2 concurrent or successive torts combined to produce a single indivisible injury. In consequence, the rule with respect to joint or concurrent negligence causing a single injury is inapplicable. Here an initial tort, resulting in an automobile collision, caused plaintiffs' injuries, of which the negligence of the first tort-feasor was the sole proximate cause, and was followed by a second tort, resulting in a second automobile collision, of which the second tort-feasor's negligence was a proximate cause, which, depending on the proofs, may or may not have caused plaintiffs additional injuries. Applicable are *Frye* v. *City of Detroit,* 256 Mich 466; and *DeWitt* v. *Gerard,* 274 Mich 299. I am in accord with Mr. Justice BLACK that we should adhere to the rule announced in those cases that the second tort-feasor is liable only for the injuries caused by his negligence.

Undoubtedly, *Allison* v. *Chandler,* 11 Mich 542; *Gilbert* v. *Kennedy,* 22 Mich 117; and *Story Parchment Co.* v. *Paterson Parchment Paper Co.,* 282 US 555 (51 S Ct 248, 75 L ed 544), are authority for the salutary rule that plaintiff's right to recover will not be denied because of difficulty of accurately measuring his damages or ascertaining the amount thereof with certainty, that the law requires no more proof of the amount of plaintiff's damages than the nature of the case will fairly permit, and that it is enough if the evidence shows the extent of the damages as a matter of just and reasonable inference, even though the result be only approximate, in which case it is competent for the jury or trier of the facts to form such reasonable and probable estimate of the damages as in the exercise of good sense and

sound judgment they shall think will produce adequate compensation. These cases ought not to be construed, however, nor should we be understood to hold, that a jury or trier of the facts may speculate or guess whether plaintiff's injuries resulted in any part from the second tort-feasor's negligence, absent any evidence proving it or from which a reasonable inference to that effect may be drawn. As said in *Story* (p 562):

"The rule which precludes the recovery of uncertain damages applies to *such as are not the certain result of the wrong,* not to those damages which are definitely attributable to the wrong and only uncertain in respect of their amount." (Italics supplied.)

If there is competent evidence showing, or from which a reasonable inference may be drawn, that the negligence of the second tort-feasor was a proximate cause of plaintiffs' injuries or any part or aggravation of them, that evidence should go to the trier of the facts for determination, no matter how difficult, of that question of fact (*DeWitt* v. *Gerard, supra*) and, if it finds in the affirmative, for determining which or what part of them and fixing the amount of the damages. (Cases above cited.) If there is no such evidence, the case should not go to a jury to guess or speculate on the question, but, instead, the case should be dismissed by the court as to the second tort-feasor. *Frye* v. *Detroit, supra.* Whether there is such evidence is not a question of fact for the jury, but of law for the court. *Druse* v. *Wheeler,* 26 Mich 189; *Curry* v. *Traver-Bird Co.,* 167 Mich 17, 21; *Boudeman* v. *Arnold,* 200 Mich 162 (8 ALR 789); *American Insurance Co. of Newark* v. *Martinek,* 216 Mich 421; *Frye* v. *Detroit, supra.* Furthermore, the question for the court is not merely whether there is literally no evidence, but whether there is any upon which a jury can properly find

a verdict for the party producing it upon whom the burden of proof is imposed. *In re Potts' Estate,* 304 Mich 47. The situation in that regard is no different when the judge sits without a jury as trier of the facts. *Hilliker* v. *Jewel Oil & Gas Co.,* 277 Mich 615; *Reedy* v. *Goodin,* 285 Mich 614.

The trial court here found that the second tort-feasor was guilty of negligence which was a proximate cause of plaintiffs' injuries. I do not agree with counsel for the second tort-feasor that, under *Frye,* we are constrained to hold that there was no evidence proving or from which an inference could be drawn that his negligence caused some part or aggravation of plaintiffs' injuries. In my view there was present here, as in *DeWitt,* evidence to go to the trier of the facts upon which to make a determination of that question. I concur, therefore, with Mr. Justice BLACK in reversing judgments against defendant Holt, awarding him costs of appeal, and remanding for taking further proofs, if necessary, and determining, in accord herewith, the amount and proportion, if any, of plaintiffs' damages proximately caused by defendant Holt's negligence and entering judgments against him accordingly. Authority for such apportioning of liability between 2 successive tort-feasors is to be found in *Rodgers* v. *Canfield,* 272 Mich 562.

SHARPE, KELLY, and CARR, JJ., concurred with DETHMERS, C. J.

SMITH, J., did not sit.

EDWARDS, J., took no part in the decision of this case.