## LOSINSKI v FORD MOTOR COMPANY

1. Trial—Evidence—Prima Facie Case—Directed Verdict.

   The defendant must concede all that is claimed from the plaintiff's evidence for the purpose of any positive instruction he may demand, and therefore it is not error to deny defendant's motion for directed verdict where the evidence submitted makes out a prima facie case for plaintiff.

2. Witnesses—Expert Witnesses—Discretion.

   Qualifications of expert witnesses are determined by the sound discretion of the trial court.

3. Witnesses—Expert Witnesses—Discretion of Court.

   A trial court's discretion to determine the qualifications of expert witnesses was not abused when it permitted testimony regarding the wiring of a car and its relation to a fire to be given by a professor holding BS, MS, and PhD degrees in metallurgical engineering who taught college courses in engineering aspects of product liability, had taken academic courses in electricity, said he had a general concept of automobile wiring systems, and had familiarized himself with the wiring of cars of the type in question.

4. Damages—Valuation of Building—Replacement Value—Market Value.

   Testimony as to the replacement cost of a building and depreciation applicable to it was properly admitted where a building destroyed by fire had no market value unless purchased as part of plaintiff's business; the value of the building for purposes of measuring damages is determined by considering evidence of

References for Points in Headnotes

[1] 53 Am Jur, Trial § 400.

[2, 3] 31 Am Jur 2d, Evidence § 31.

    Review on appeal of decision of trial court as to qualification or competency of expert witnesses, 166 ALR 1067.

[4] 13 Am Jur 2d, Buildings § 22.

[5, 6] 63 Am Jur 2d, Products Liability §§ 3, 97.

    Manufacturer's responsibility for defective component supplied by another and incorporated in product, 3 ALR3d 1016.

the building's original cost, the uses to which it has been put, its age, condition, location, and other factors.

5. PRODUCTS LIABILITY—WARRANTIES—HIDDEN DEFECTS.

A verdict by a jury against a manufacturer of a product but exonerating the retailer is not inconsistent in an action for breach of implied warranty where the defect may not be discoverable upon reasonable inspection by the retailer, who sold it in the condition in which it was purchased from the manufacturer.

6. PRODUCTS LIABILITY—HIDDEN DEFECTS—AUTOMOBILES.

A verdict against an automobile manufacturer but not against the retailer is not inconsistent in an action for destruction of a building by a fire originating in the electrical system of a car since potential wiring defects in automobiles are difficult to ascertain and may be unknown to the retailer.

Appeal from Alpena, Philip J. Glennie, J. Submitted Division 3 June 12, 1972, at Grand Rapids. (Docket Nos. 12725, 12726.) Decided September 27, 1972.

Complaints by Alvin A. Losinski and Michigan Mutual Liability Insurance Company against Ford Motor Company and Bob Howell Ford, Inc., for breach of warranty. Judgment for plaintiffs against Ford Motor Company only. Defendant Ford Motor Company appeals. Affirmed.

*Warren C. Droomers,* for plaintiffs.

*Alexander, Buchanan & Seavitt* (by *John N. Highland),* for defendant Ford Motor Company.

Before: FITZGERALD, P. J., and HOLBROOK and T. M. BURNS, JJ.

T. M. BURNS, J. This is an action for breach of warranty, express and implied, brought against Ford Motor Company and one of its dealers. The jury found for the plaintiffs against the Ford Mo-

tor Company only. Defendant Ford Motor Company appeals as of right.

The facts of the present case are not materially in dispute. In late November, 1966, plaintiff purchased a new Ford automobile from Bob Howell Ford Inc., a Ford dealer.

The plaintiff customarily kept the auto in a garage next to his home. However, on the morning of January 18, 1967, he drove the car into a small repair garage in order to wash it. This garage was located approximately 200 feet behind plaintiff's home and was used to store vehicles and other small implements the plaintiff used in his excavating and septic tank business.

On the date in question, plaintiff washed the car and left it in the repair garage with its windows closed and its hood up. Shortly after washing the car, plaintiff went into his house to eat lunch. About 30 minutes later, a neighbor informed him that the repair garage was on fire. The flames at this point were already above its roof, and the structure was beginning to collapse. The repair garage and its contents were completely destroyed by the fire.

A member of the Michigan State Police, Corporal William Allen, who was trained in fire prevention and investigation, assisted in fighting the fire and conducted an investigation afterwards. He testified at trial that in his opinion the fire originated in the front of the Ford automobile. He based that opinion on two factors: (1) there was no indication that the fire had started elsewhere and spread to the car, and (2) the most intense burning occurred in the car, causing a total destruction of it which would not have been so complete had the fire started elsewhere.

In addition, Dr. Charles Nagler, a professor of

metallurgy at Wayne State University, and a consulting engineer, testified that in his opinion the fire was caused by a short in the electrical system of the Ford automobile.

The value of the garage was determined by the formula of replacement cost less depreciation. The plaintiff testified that there would have been no market for the garage in the area unless it was purchased in conjunction with his business. Plaintiff also presented other witnesses who gave their opinions relative to the value of the garage.

Defendant moved for a directed verdict at the close of the plaintiff's proofs. The trial court, however, reserved its decision until the completion of defendant's proofs. At the close of all the proofs, defendant renewed its motion for a directed verdict. The motion was denied.

The jury returned a verdict against Ford Motor Company and in favor of the plaintiffs Michigan Mutual Liability Insurance Company,[1] and Losinski for $10,500 and $2,480.90 respectively. The jury found no cause of action against defendant Bob Howell Ford, Incorporated.

Defendant Ford Motor Company then moved for a judgment n.o.v. or in the alternative for a new trial. The trial court denied the motion.

The issues raised on appeal by defendant Ford Motor Company will be treated in the order presented below.

1. *Did the trial court err in denying defendant's motion for a directed verdict or for a judgment notwithstanding the verdict?*

The defendant Ford Motor Company argues that viewing the evidence in the light most favorable to plaintiff, there was insufficient evidence of a defect

---

[1] Michigan Mutual Liability Insurance Company was plaintiff Losinski's insurer and subrogee.

in the Ford automobile which existed at the time the car left Ford's possession, and which was the proximate cause of the fire: We disagree.

The standard to be employed in determining whether plaintiff has made out a prima facie case precluding the granting of a directed verdict was recently enunciated in *Schedlbauer v Chris-Craft Corp,* 381 Mich 217, 229–230 (1968), wherein the Court quoted with approval the following language from *Detroit & Milwaukee R Co v Van Steinburg,* 17 Mich 99, 117–118 (1868):

" 'In determining this question [whether to grant a motion for a directed verdict], we must look at the case as it appears from the plaintiff's own testimony, unqualified by any which was offered on the part of the defendants, and must concede to him any thing which he could fairly claim upon that evidence. He had a right to ask the jury to believe the case as he presented it; and, however improbable some portions of his testimony may appear to us, we can not say that the jury might not have given it full credence. It is for them, and not for the court to compare and weigh the evidence. For the purposes of any positive instructions which one party may demand upon the evidence, he must concede all that his opponent may claim from it.' "

In order to recover from the Ford Motor Company for breach of implied warranty, the plaintiff must show that (1) the automobile in question had a defect attributable to the manufacturer and (2) that the defendant was the cause of the injury complained of. *Heckel v American Coupling Corp,* 384 Mich 19, 22 (1970). See also *Piercefield v Remington Arms Co,* 375 Mich 85 (1965); *Manzoni v Detroit Coca-Cola Co,* 363 Mich 235 (1961).

In the instant case, plaintiff presented evidence that the electrical system in the auto was defective

at the time the auto was manufactured, and that this defect was the cause of the fire.

Therefore applying the test as set forth in *Schedlbauer, supra,* we hold that the plaintiff made out a sufficient case to go to the jury and that the trial court did not err in denying defendant's motion for a directed verdict and a judgment notwithstanding the verdict.

2. *Did the trial court err in allowing Dr. Charles Nagler to testify as an expert regarding electrical wiring in a motor vehicle?*

Defendant contends that Dr. Nagler was not a qualified expert in the field of automobile wiring and that, therefore, the trial court erred in permitting him to testify regarding the wiring in the 1967 Ford. We cannot agree.

It has long been recognized that the determination of the qualifications of an expert witness rests within the sound discretion of the trial court. This Court will only interfere to correct an abuse of that discretion. *People v Hawthorne,* 293 Mich 15, 23 (1940); *Accetola v Hood,* 7 Mich App 83 (1967); *Auto-Ion Chemicals, Inc v Gates Rubber Co,* 33 Mich App 574 (1971).

The record in the present case reveals that Dr. Nagler holds BS, MS and PhD degrees in metallurgical engineering. He teaches collegiate courses in metallurgy and the engineering aspects of product liability. He is well informed on the subject of the changes in the characteristics of metals at different temperatures. In addition, Dr. Nagler testified that he had taken academic courses in electricity, that he had a general concept of the wiring system of automobiles, and that he used a handbook to familiarize himself with the wiring system of the 1967 Ford.

In view of the witness's qualifications as set

forth above, we hold that the trial court did not abuse its discretion in allowing Dr. Nagler to testify concerning the electrical wiring of the 1967 Ford automobile.

3. *Where there was no market value in the area for a building of the type destroyed, did the court err in allowing testimony as to replacement cost less depreciation to arrive at a market value?*

It is the defendant's position that the proper measure of damages for the repair garage was the difference between the market value of the land with the garage and the value of the land after it was destroyed.

The rule urged by the defendant is inapplicable where, as here, there is no market for the type of building destroyed. In such cases, the cash value of the building must be ascertained by evidence of the building's original cost, the uses to which it has been put, its age, condition, location, and the like. *Fite v North River Insurance Co,* 199 Mich 467 (1917); *William R Roach & Co v Blair,* 190 Mich 11 (1916); *Close v Ann Arbor R Co,* 169 Mich 392 (1912).

Here the record reveals that there was no market value for the building itself unless purchased as a part of plaintiff's business. This evidence was uncontroverted and sufficient to bring this case within the rule announced in *Fite, Roach,* and *Close, supra.*

Therefore, we hold that the trial court did not err in allowing testimony as to replacement cost less depreciation to arrive at a market value where there was no market value in the area for the property that was destroyed.

4. *In a suit against a manufacturer and a retailer for breach of implied warranty, where the*

*alleged defect may not be discoverable upon a
reasonable inspection by the retailer, is a verdict
against the manufacturer but exonerating the re-
tailer inherently inconsistent?*

In its cross-complaint against defendant Bob
Howell Ford, Incorporated, defendant Ford Motor
Company asserts that if the defect in the automo-
bile existed at the time it left the manufacturer, it
also existed when the auto left the hands of the
dealer; and that since both the manufacturer and
retailer make the same implied warranties to the
consumer, the jury's verdict which held the manu-
facturer liable while exonerating the retailer was
inconsistent. This assertion is without merit.

In *Camden Fire Ins Co v Peterman,* 278 Mich
615 (1937), a consumer brought suit against a
retailer for fire loss caused by a defective stove
purchased from the retailer. In rejecting the con-
sumer's claim against the retailer, the Court
stated at 618:

"In the case at bar the defendant sold a gasoline
stove which, as it remained in the store without gaso-
line in it was not a dangerous article; the defects that it
had were hidden and unknown to the seller and could
not be readily ascertained without the use of gasoline.
It was sold in the condition in which the buyer pur-
chased it from the manufacturer without any suspicion
upon the part of the seller of its defects. Under such
circumstances the seller may not be called to respond in
damages for the resultant injury, nor do we think the
defendant may be held liable under the terms of an
express contract."[2]

Under this theory, considering the difficulty of

[2] Although the case is relatively old in view of the rapidly expand-
ing area of products liability, it nevertheless remains unchallenged in
this state and the rule announced therein enjoys wide support in
other states. See 6 ALR3d 12, *Seller's Duty to Test or Inspect As
Affecting His Liability For Product-Caused Injury.*

ascertaining potential wiring defects in automobiles, the jury in the present case could well have found against the manufacturer but not the retailer.

In view of the foregoing, we hold that the jury's verdict was not inconsistent.

Affirmed.