ABEL v ELI LILLY AND COMPANY

Docket No. 77-3421. Submitted June 4, 1979, at Detroit.—Decided December 5, 1979. Leave to appeal applied for.

Gail Abel and 181 other individuals brought a products liability action against Eli Lilly and Company and other manufacturers of synthetic estrogens, commonly known as DES, used to prevent miscarriages in pregnant women. The plaintiffs are the daughters of women who used DES during their pregnancies and the husbands of the female plaintiffs. The defendants are those manufacturers of DES whose product was distributed in Michigan during the relevant time period. The plaintiffs alleged that the defendants were jointly and severally liable for damages on the theories of negligence, breach of express and implied warranties, fraud and conspiracy. The defendants moved for summary judgment of no cause of action as to all the plaintiffs who were unable to name the manufacturer of the particular product which caused their injury and as to all the

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 879.

[1, 4] 61 Am Jur 2d, Pleading §§ 71 et seq., 229-231, 233.

[2, 9] 63 Am Jur 2d, Products Liability §§ 2-4, 9 et seq., 78 et seq., 110, 112, 114.

[3, 10, 12] 63 Am Jur 2d, Products Liability §§ 3, 5.

Products liability: necessity and sufficiency of identification of defendant as manufacturer or seller of products alleged to have caused injury. 51 ALR3d 1344.

[4-8, 11] 59 Am Jur 2d, Parties §§ 124, 125.

63 Am Jur 2d, Products Liability § 208.

74 Am Jur 2d, Torts §§ 61-64.

Liability of manufacturer or seller for injury caused by drug or medicine sold. 79 ALR2d 301.

Products liability: manufacturer and dealer or distributor as joint or concurrent tortfeasors. 97 ALR2d 811.

Liability of manufacturer or seller for injury or death allegedly caused by failure to warn regarding danger in use of vaccine or prescription drug. 94 ALR3d 748.

[7, 8, 11] 71 Am Jur 2d, Torts § 72.

[9, 12] 63 Am Jur 2d, Products Liability §§ 145, 146.

Products liability: strict liability in tort. 13 ALR3d 1057.

plaintiffs on the plaintiffs' count alleging collective, industry-wide liability. The Wayne Circuit Court, Thomas Roumell, J., granted partial summary judgment of no cause of action: (1) for all the defendants against those plaintiffs unable to allege specifically the defendant whose product harmed them; (2) for all the defendants other than the named defendant against those plaintiffs who alleged a particular defendant caused their harm; and (3) for all the defendants against all the plaintiffs on the claim of collective liability. Plaintiffs appeal. *Held:*

1. The motion for summary judgment on the basis that plaintiffs failed to state a cause of action upon which relief can be granted tested the legal sufficiency of the pleadings to determine whether the plaintiffs' claims were so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. That motion did not test the ability of the plaintiffs to prove their allegations. In testing the plaintiffs' claims, both the trial court and the Court of Appeals must accept as true all well pleaded facts in plaintiffs' complaint.

2. Since plaintiffs alleged that the defendants acted in concert in marketing the defective drug, it was improper to grant the motion for summary judgment of no cause of action, inasmuch as joint liability by all those acting in concert may flow from the direct action of only one of those who are acting in concert. The question of whether the plaintiffs will be able to prove the alleged concerted action by the defendants is not germane to the question of whether the plaintiffs have sufficiently pleaded a cause of action upon which relief can be granted.

3. A joint tortfeasor is jointly and severally liable for the entire amount of damages, even if it caused no harm itself. While a joint tortfeasor may dispute the fact of liability and may seek contribution from its fellow tortfeasors, the joint tortfeasor may not dispute the extent of liability, nor may it seek to show that a greater portion of liability and damages was caused by the fellow joint tortfeasors.

4. The theory of alternative liability does not involve a joint tort, but rather, it involves independent acts by two or more tortfeasors, each of whom acted wrongfully, with the injury resulting from the acts of only one of the tortfeasors. Joint and several liability is imposed under these circumstances, not because all the tortfeasors are responsible for the injury, but rather, because it is impossible to tell which tortfeasor is responsible. An individual tortfeasor may attempt to show that the damages flowed from the wrongful act of another tortfea-

sor. The burden of proving lack of causation of the injuries rests with the tortfeasor seeking to absolve itself of liability.

5. Since plaintiffs alleged alternative liability by the defendants in the marketing of a defective drug in Michigan, it was error to grant defendants' motion for summary judgment on the basis that plaintiff failed to state a cause of action upon which relief can be granted. If the plaintiffs establish the wrongful conduct of the defendants such that only the question of apportionment of damages remains, the burden of disproving causation then shifts to those defendants seeking to absolve themselves from liability for a particular injury.

Reversed and remanded.

A. E. MOORE, J., dissented. He would hold that summary judgment of no cause of action was properly granted with respect to those plaintiffs who were unable to specifically identify the defendant who manufactured the drug causing their specific injuries. He would further hold that summary judgment of no cause of action on plaintiffs' claim of collective liability was proper, since the theory pleaded by the plaintiffs is not recognized in Michigan. He would affirm.

OPINION OF THE COURT

1. JUDGMENT — SUMMARY JUDGMENT — LEGAL SUFFICIENCY — STANDARD OF REVIEW — APPEAL AND ERROR — COURT RULES.

A motion for summary judgment on the basis that a plaintiff has failed to state a claim upon which relief can be granted tests the legal sufficiency of the pleadings to determine whether a plaintiff's claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery, not the ability of a plaintiff to prove his allegations; in testing the legal sufficiency of a plaintiff's pleadings both the trial court and the Court of Appeals must accept as true all the well pleaded facts in the plaintiff's complaint (GCR 1963, 117.2[1]).

2. PRODUCTS LIABILITY — NATURE OF REMEDY — THEORIES OF RECOVERY — NEGLIGENCE — BREACH OF IMPLIED WARRANTY.

Products liability in Michigan, being essentially a judicial development having its roots in both tort and contract law yet distinct from both, provides two theories of recovery, those being: negligence and breach of implied warranty, with proof of the common-law elements of duty, breach, damage and causation being necessary to establish the former, and proof of a defect in a product attributable to the manufacturer causing injury being necessary to establish the latter.

3. PRODUCTS LIABILITY — EVIDENCE — SOURCE OF DEFECTIVE PRODUCT.

Recovery for injuries resulting from a defective product requires that the plaintiff show that the product came from the defendant manufacturer.

4. PRODUCTS LIABILITY — JOINT TORTS — CONCERTED ACTION — PLEADINGS — SUMMARY JUDGMENT — COURT RULES.

Summary judgment on the basis of failure to state a cause of action upon which relief can be granted is improper where a plaintiff alleges that the defendant drug manufacturers acted in concert in marketing a defective drug, since joint liability by all who are acting in concert may flow from the direct action of only one of those who are acting in concert; the question of whether a plaintiff will be able to prove the alleged concerted action is not germane to the question of whether a cause of action upon which relief can be granted has been sufficiently pleaded (GCR 1963, 117.2[1]).

5. TORTS — JOINT TORTS — LIABILITY — DAMAGES — CONTRIBUTION.

A joint tortfeasor is jointly and severally liable for the entire amount of damages, even if he caused no harm himself; and, although a joint tortfeasor may dispute the fact of liability and may seek contribution from his fellow tortfeasors, he may not dispute the extent of liability, nor may he seek to show a greater portion of liability and damages was caused by his fellow joint tortfeasors.

6. TORTS — ALTERNATIVE LIABILITY — JOINT TORTS.

The theory of alternative liability involves not a joint tort, but rather, involves independent acts by two or more tortfeasors, each of whom acted wrongfully, with the injury resulting from the acts of only one of the tortfeasors.

7. TORTS — ALTERNATIVE LIABILITY — DAMAGES — DEFENSES — BURDEN OF PROOF.

Joint and several liability is imposed under the theory of alternative liability, not because all the tortfeasors are responsible for the injury, but rather, because it is impossible to tell which tortfeasor is responsible; accordingly, an individual tortfeasor may attempt to show that the damages flowed from the wrongful act of others rather than his own wrongful act, with the burden of proving that his wrongful act did not cause the plaintiff's injury resting upon the tortfeasor seeking to absolve himself from liability.

8. PRODUCTS LIABILITY — ALTERNATIVE LIABILITY — CAUSATION — BURDEN OF PROOF — SUMMARY JUDGMENT.

The burden of proof of disproving causation shifts to the defendants where the wrongful conduct of each of the defendants has been established and only the question of apportionment of damages among the proven wrongdoers remains; accordingly, it is error to grant to the defendant drug manufacturers summary judgment on the basis of failure to state a cause of action where the plaintiffs allege that all the defendants marketed the same defective drug in Michigan and that the defendants are alternatively liable for damages arising out of the use of that drug.

DISSENT BY A. E. MOORE, J.

9. PRODUCTS LIABILITY — THEORIES OF RECOVERY — STRICT LIABILITY — NEGLIGENCE — BREACH OF WARRANTY — ELEMENTS OF PROOF.

*Michigan does not recognize strict liability as a theory of recovery for products liability; but rather, Michigan recognizes only negligence and warranty as theories of recovery for products liability, both of which require the plaintiff to prove that the defendant supplied a defective product and that the defect caused injury to the plaintiff.*

10. PRODUCTS LIABILITY — BURDEN OF PROOF — ELEMENTS OF PROOF.

*Recovery on a products liability claim requires that the plaintiff prove that the defendant produced, sold, or was in some way responsible for the product causing injury; accordingly, identification of the defective product with the defendant is inherent in every products liability action.*

11. PRODUCTS LIABILITY — BURDEN OF PROOF — LIABILITY — DAMAGES.

*The burden of proof shifts to the defendants in a multi-defendant products liability action only after the plaintiff has established both the liability of one of the defendants and the fact that the defendants were working in concert; the burden of proof so shifted to the defendants is limited to the question of the proportion of damages for which each defendant is liable.*

12. PRODUCTS LIABILITY — COLLECTIVE LIABILITY — PLEADINGS — SUMMARY JUDGMENT.

*Michigan does not recognize in products liability actions the theory of "collective" or "enterprise" liability, those being theories of strict liability; therefore, summary judgment on the basis of failure to state a cause of action was properly granted*

with respect to claims by plaintiffs who were unable to specifically identify which of defendant drug manufacturers manufactured an allegedly defective drug which caused injuries to each particular plaintiff.

*Charfoos & Charfoos* (by *Lawrence S. Charfoos, Thomas H. Bleakley* and *J. Douglas Peters)* *(Hayim I. Gross,* of counsel), for plaintiffs.

*Shook, Hardy & Bacon* (by *Lane D. Bauer, Leo P. Dreyer* and *Larry R. O'Neal)* and *Dickinson, Wright, McKean, Cudlip & Moon* (by *John E. S. Scott* and *Robert S. Krause),* for defendant Eli Lilly and Company.

*Kitch & Suhrheinrich* (by *James G. Smith),* for defendant The Upjohn Company.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C.,* for defendant E. R. Squibb and Sons, Inc.

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P.C.* (by *Edmund M. Brady),* for defendant William H. Rorer, Inc.

*Seavitt, Wescott, Miller, Stowe & Magnuson* (by *Perry J. Seavitt* and *Gregory A. Reynolds),* for defendants Merck & Company and Merck, Sharp & Dohme.

*Richard D. Kramer,* for defendant The Blue Line Chemical Company.

*Lacey & Jones* (by *Kenneth M. Zorn),* for Vale Chemical Company.

*Johnson, Campbell & Moesta, P.C.,* for defendant Central Pharmacal Company.

*Garan, Lucow, Miller, Lehman, Seward &
Cooper,* for defendant Rexall Drug Company.

*Warner, Norcross & Judd* (by *Wallson G. Knack*
and *John D. Tully),* for defendant McNeil Labora-
tories, Inc.

*Harvey, Kruse & Westen, P.C.* (by *James N.
Martin),* for defendant McNeil Laboratories, Inc.

*Markle & Markle* and *James S. Goulding* (of
counsel), for defendants Schering Corporation and
White Laboratories, Inc.

*Sommers, Schwartz, Silver, Schwartz, Tyler &
Gordon,* for defendant Cole Pharmacal Company.

*Jenkins, Fortescue, Miller & Nystrom, P.C.,* for
defendant Burroughs Wellcome Company.

*Lord, Bissel & Brook* (by *Hugh Moore) (Schure-
man, Frakes, Glass & Wulfmeier,* of counsel), for
defendant Abbot Laboratories.

*Dice, Sweeney & Sullivan, P.C.* (by *David R.
Getto),* for defendant S. J. Tutag and Company.

*Morbach, Cheatham & MacArthur,* for defen-
dant Kremers-Urban Company.

Before: R. M. MAHER, P.J., and BRONSON and
A. E. MOORE,* JJ.

R. M. MAHER, P.J. Plaintiffs appeal as of right
from an order of the Wayne County Circuit Court
granting partial summary judgment in favor of
defendants. This is a multiple-plaintiff, multiple-

---

* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

defendant products liability action involving a widely-distributed prescription drug. The trial judge ruled that each plaintiff, in order to state a cause of action sufficient to withstand a motion for summary judgment, must identify in the complaint which of the defendants allegedly manufactured the specific product which caused his or her harm. Those plaintiffs who could not name the particular defendant whose product harmed them had summary judgment of no cause of action entered against them. Those plaintiffs who named a particular defendant had their claims against all defendants other than the named defendant dismissed.

This action was commenced on September 17, 1974, when plaintiffs filed a complaint alleging that defendants are jointly and severally liable for damages on the theories of negligence, breach of express and implied warranties, fraud and conspiracy. The complaint was amended 14 times. Specifically, the complaint alleged that defendants were negligent in failing to perform adequate tests on the synthetic estrogens known as dienestrol, diethylstilbestrol or diethylstilbestrol diproprionate (hereinafter DES),[1] in distributing DES and promoting it for the prevention of miscarriages in pregnant women when they knew, or in exercise of due care would have discovered, that it presented a danger to the child *in utero,* and in failing to warn consumers of the dangers inherent in use of DES to prevent miscarriages. The complaint further alleged that DES was defective in that it was not effective in the prevention of miscarriage, in that

---

[1] Defendants assert in their brief that only diethylstilbestrol is properly denominated DES, the other compounds being chemically distinct from DES. We express no opinion on the similarities or differences among the various substances, but simply adopt the designation "DES" for convenience.

it caused the development of cancerous or precancerous lesions in the vaginas of females whose mothers consumed DES while pregnant, and in that the product carried inadequate warnings of the danger presented to unborn children whose mothers consumed DES while pregnant. The female plaintiffs alleged that they developed cancerous or precancerous conditions as a result of the consumption of DES by their mothers while plaintiffs were *in utero.* The male plaintiffs are husbands of the female plaintiffs.

Plaintiffs' complaint also alleged that the defendants named therein constituted all of the known manufacturers of DES whose products were distributed in Michigan during the relevant time period, that one or more of the named defendants caused the harm to each of the plaintiffs, but that some plaintiffs were unable to discover which particular defendant caused their harm because of the destruction of medical and pharmacy records. Plaintiffs further alleged that the inability to name the individual defendant should not bar recovery, in that defendants were jointly and severally liable for the harm to plaintiffs because all defendants acted wrongfully and only the drug companies named in the suit could have caused plaintiffs' harm. The complaint further alleged that defendants were collectively liable for plaintiffs' harm.

Discovery and other proceedings, for the most part irrelevant to this appeal, consumed more than two years and produced a voluminous record. On February 1, 1977, defendants filed a motion for partial summary judgment alleging: (1) that they were entitled under GCR 1963, 117.2(1) to summary judgment of no cause of action against all plaintiffs who were unable to name the manufac-

turer of the particular product which caused their injury; (2) that plaintiffs' allegations of collective, industry-wide liability did not state a cause of action cognizable under the laws of the State of Michigan, thus requiring summary judgment as to that claim under GCR 1963, 117.2(1); and (3) that there existed no genuine issue as to any material fact regarding the conspiracy or concert of action count and that defendants were entitled to summary judgment as a matter of law under GCR 1963, 117.2(3). Defendants' motion was supported by affidavits which stated that more than 300 manufacturers were listed in standard reference works as offering DES for sale during the relevant time period. In opposition to the motion, plaintiffs produced affidavits to the effect that the list of defendants was "inclusive of" manufacturers whose products were being distributed in Michigan during the relevant time period.

On May 16, 1977, the trial court issued its opinion granting summary judgment of no cause of action: (1) for all defendants against those plaintiffs unable to allege specifically the defendant whose product harmed them; (2) for all defendants, other than the defendant named, against those plaintiffs who alleged that a particular defendant caused their harm; and (3) for all defendants against all plaintiffs on the claim of collective liability. All judgments were granted pursuant to GCR 1963, 117.2(1).

On August 25, 1977, plaintiffs filed their 14th amended complaint, in which 70 plaintiffs alleged that a particular defendant caused their harm. On the same date, the trial court entered a final order granting partial summary judgment for defendants in accordance with its opinion of May 16, 1977. On September 7, 1977, claim of appeal was filed in this Court on behalf of 182 plaintiffs.

Plaintiffs argue on appeal that the trial court erred, first, in holding that each plaintiff must allege which defendant produced the drug which harmed her in order to state a cause of action and, second, in holding that in their allegations of collective liability plaintiffs failed to state a claim upon which relief may be granted. In reviewing plaintiffs' claims of error, we must keep in mind certain rules. We note first of all that a motion for summary judgment under GCR 1963, 117.2(1) merely tests the legal sufficiency of the pleadings. *Todd v Biglow,* 51 Mich App 346; 214 NW2d 733 (1974). The test is whether plaintiffs' claim as pled is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery. *Crowther v Ross Chemical & Manufacturing Co,* 42 Mich App 426; 202 NW2d 577 (1972). Further, we must bear in mind that a motion under Rule 117.2(1) does not test plaintiffs' ability to prove their allegations. *Lompre v Venetjoki,* 76 Mich App 521; 257 NW2d 151 (1977). The trial court in ruling on the motion must accept as true all well pleaded facts in the complaint. *Stewart v Troutt,* 73 Mich App 378; 251 NW2d 594 (1977). On review, this Court must apply the same rules. *Lincoln Park Detention Officers v Lincoln Park,* 76 Mich App 358; 256 NW2d 593 (1977).

The remedy afforded consumers as against sellers and manufacturers of defective goods, which has been termed "products liability", has been described as "not [a] statutory, but essentially a judicial development which the courts should be free to develop further". *Parish v B F Goodrich Co,* 395 Mich 271; 235 NW2d 570 (1975). See also *Moning v Alfono,* 400 Mich 425; 254 NW2d 759 (1977). It has roots in both contract and tort law, but is distinct from both. See discussion in *Cova v*

*Harley Davidson Motor Co,* 26 Mich App 602; 182 NW2d 800 (1970). In Michigan, two theories of recovery are recognized in the area of products liability: negligence and breach of implied warranty. *Johnson v Chrysler Corp,* 74 Mich App 532; 254 NW2d 569 (1977). Under a negligence theory, the plaintiff must establish the traditional common-law elements of duty, breach, damage and causation. See *Moning v Alfono, supra.* To establish breach of implied warranty, the plaintiff must show that a defect in the product, attributable to the manufacturer, caused his injuries. *Smith v E R Squibb & Sons, Inc,* 405 Mich 79; 273 NW2d 476 (1979).

It is self-evident that the defective product must be shown to have come from defendant rather than some other manufacturer, for if defendant has neither acted negligently nor breached his implied warranty he can incur no liability. See Anno: *Products Liability: Necessity and sufficiency of identification of defendant as manufacturer or seller of product alleged to have caused injury,* 51 ALR3d 1344. In the ordinary case, the plaintiff knows (or believes he knows) the identity of the sole tortfeasor, and the proofs are directed toward establishing the wrongful conduct of the tortfeasor and the causal connection between that conduct and the harm to plaintiff. Occasionally plaintiff alleges that one or more tortfeasors have acted wrongfully and that one or the other, or both, caused his injury. See, for example, *Jordan v Whiting Corp,* 396 Mich 145; 240 NW2d 468 (1976) (the estate of crane repairman electrocuted by crane sues the manufacturer of the crane parts, the assembler of the crane and the installer of the wiring), *Elsasser v American Motors Corp,* 81 Mich App 379; 265 NW2d 339 (1978) (a plaintiff injured

by fire resulting from a collision which ruptured the gas tank of his car sues the driver of the car which struck his and the manufacturer of his car). In such a case plaintiff seeks to prove wrongful conduct on the part of all defendants and resulting harm to himself. A defendant in such a case, in addition to denying that his conduct was wrongful, often defends on grounds that his negligence or his defective product has not been shown to be a proximate cause of plaintiff's injury. See the discussion in *Dooms v Stewart Bolling & Co,* 68 Mich App 5; 241 NW2d 738 (1976).

Those cases in which plaintiff alleges that his injury was caused by more than one tortfeasor may be variously classified. Prosser divides so-called joint torts according to the rationale for imposing joint and several liability into eight classes, including those involving concerted action and cases of alternative liability.[2] The claims asserted in the case at bar fall into two categories: concerted action and alternative liability.[3] Plaintiffs allege that all defendants acted wrongfully in producing and marketing a defective product, and that each plaintiff was injured by the product of one or the other defendant. They also allege that all defendants acted wrongfully, and one (but only one) of the defendants caused the harm to each individual plaintiff, therefore, they are alternatively liable. Plaintiffs also allege that all defendants, acting in concert, caused the marketing of

---

[2] The other classes are: vicarious liability; common duty; concurrent causation of a single, indivisible result, which neither would have caused alone; concurrent causation of a single, indivisible result, which either would have caused alone; successive injuries; damage of the same kind, which it is difficult to apportion; and acts innocent in themselves which together cause damage. Prosser, *Joint Torts and Several Liability,* 25 Cal L Rev 413, 429-442 (1937).

[3] See analysis in Sheiner, *DES and a Proposed Theory of Enterprise Liability,* 46 Fordham L Rev 963, 978-995 (1978).

DES, and that this concerted activity is the cause of plaintiffs' injuries and that all defendants, having acted together to cause all the harm, are jointly and severally liable therefor.

Defendants argue in their brief on appeal that permitting plaintiffs to proceed to trial on their concert of action theory is without precedent and is tantamount to imposing liability on an innocent manufacturer for the actions of his fellows. This argument misperceives the nature of plaintiffs' claim. It is well-established that if two or more persons engage negligently in concerted activity, and as a result plaintiff is injured, all are liable even though only one directly caused the injury. *McCoy v DeLiefde,* 376 Mich 198, 205; 135 NW2d 916 (1965) (opinion of Souris, J.). Liability is imposed on all because all have joined in breaching their duty of care to plaintiff, and he was injured as a result of that breach. Plaintiffs in their complaint allege that defendants acted in concert to produce and market ineffective and dangerous products, without adequate testing and without adequate warnings. These allegations are sufficient to state a cause of action, and summary judgment as to the concerted activity claim was improper, *McCoy v DeLiefde, supra.*

Defendants also argue that there is no evidence that defendants acted in concert in producing and marketing DES, and claim that no such proof exists. It is sufficient to say that a motion for summary judgment under GCR 1963, 117.2(1) tests only the sufficiency of the pleadings. *Lompre v Venetjoki, supra.* Resolution of this disputed fact question must await trial, *McCoy v DeLiefde, supra.*[4]

---

[4] For an excellent discussion of the proof problems which are likely to be presented in this case, see Sheiner, *supra,* note 3, 983-985.

The concert of action claim is a true joint tort, and once the fact of a tortfeasor's liability is established, its extent is clear: he is jointly and severally liable for the entire amount of damages, although he may be entitled to contribution from his fellow tortfeasors. See Prosser, *Joint Torts and Several Liability,* 25 Cal L Rev 413 (1937), *Caldwell v Fox,* 394 Mich 401; 231 NW2d 46 (1975). Although a joint tortfeasor may (and usually does) dispute the fact of liability, he may not dispute the extent thereof. He may seek to show that only his codefendant, and not he, acted wrongfully, but he may not seek to show that his fellow tortfeasor caused all or the greater portion of the damage and should therefore pay a greater share. See *Sexton v American Aggregates,* 60 Mich App 524; 231 NW2d 449 (1975). Even if defendant caused no harm himself, he is liable for the harm caused by his fellows because all acted jointly. *Benson v Ross,* 143 Mich 452; 106 NW 1120 (1906).

The alternative liability theory, on the other hand, involves not a joint tort, but rather, involves independent acts by two or more tortfeasors, all of whom have acted wrongfully, but only one of whom has injured plaintiff. Joint and several liability is imposed, not because all are responsible for the damage, but because it is impossible to tell which one is responsible. Rather than deny the innocent plaintiff his recovery because he cannot prove which of two or more wrongdoers injured him, the courts impose joint liability on all wrongdoers. In cases of alternative liability, a defendant is free to absolve himself of blame and cast the entire burden on his fellows, even if it be shown that he acted wrongfully, but that defendant must bear the burden of proving that his wrongful act was not the cause of plaintiff's injury. See *Sum-*

*mers v Tice,* 33 Cal 2d 80; 199 P2d 1; 5 ALR2d 91 (1948). Prosser has described the situation typified by *Summers, supra,* as "clearly established double fault and alternative liability". Prosser, Torts (3d ed), § 41, p 247. This apt description helps to distinguish these cases from the situation in which there is but a single act of negligence by one of multiple defendants, but it is not clear which defendant committed that act. See Anno: *Liability of Several Persons Guilty of Acts One of Which Alone Caused Injury, in Absence of Showing as to Whose Act Was the Cause,* 5 ALR2d 98, 100. Joint and several liability is imposed only on those who are clearly shown to be wrongdoers.

Although no cases directly on point appear in Michigan, the shifting of the burden of disproving causation once defendant's wrongful conduct has been established appears in other contexts in Michigan law. In *Snider v Bob Thibodeau Ford, Inc,* 42 Mich App 708; 202 NW2d 727 (1972), for example, a consumer brought an action against both the manufacturer of his automobile and the dealer who had repaired the brakes which allegedly failed and caused his accident. The trial court in that case directed a verdict for the manufacturer (Ford Motor Company), and plaintiff appealed. Rejecting Ford Motor Company's argument that the directed verdict was proper because plaintiff's proofs were insufficient to show which defendant was responsible for the defect, if any, this Court said:

"Were a jury to decide that the wrong to Snider had been established, the question to which of two possible tortfeasors—Ford or Thibodeau—liability should be assigned does not pose an issue of conjectural cause.

"True, the burden of proving which of two possible wrongdoers is responsible is generally assigned to the

plaintiff. The courts have, however, shown a willingness to consider special circumstances when allocating the burden of proof. This accords with the general view that the placing of that burden is 'merely a question of policy and fairness based on experience in the different situations'." (Footnote omitted.) 42 Mich App, at 718.

In *Holloway v General Motors Corp (On Rehearing)*, 403 Mich 614; 271 NW2d 777 (1978), the Supreme Court held that plaintiff need not show the precise nature of the defect in defendant's product so long as he carries his burden of establishing by a preponderance of the evidence that some defect attributable to defendant caused his injury, saying in a footnote:

"In a somewhat analogous situation, the rule is that a plaintiff need not prove which person among alternative negligent tortfeasors caused his injury. See *Summers v Tice,* 33 Cal 2d 80; 199 P2d 1 (1948); Prosser, *supra* § 41, pp 243-244." *Holloway, supra,* fn 15, 625.

Also instructive is the analysis presented in *Maddux v Donaldson,* 362 Mich 425; 108 NW2d 33; 100 ALR2d 1 (1961), which involved successive automobile collisions. The Court held that where plaintiff was unable to prove what portion of the damages were caused by each collision because of the circumstances of the accident, the burden of uncertainty should fall on the wrongdoers, who would be jointly and severally liable for all plaintiff's damages.

"Is it better, as we asked heretofore, that a plaintiff, injured through no fault of his own, take nothing, rather than that a tort-feasor pay no more than his theoretical share of the damages accruing out of a confused situation which his wrong has helped to create?" *Maddux, supra,* 435.

The Court answered the question thus posed by holding that, if injustice is inevitable, the burden should fall on the wrongdoer rather than on the innocent plaintiff. With this conclusion we agree.[5]

In the case before us, as in *Maddux, supra,* the problem is essentially one of apportionment of damages among proven wrongdoers. Plaintiffs must establish that they suffered a certain amount of damages at the hands of defendants, all of whom are tortfeasors. Should plaintiffs succeed in establishing that defendants are alternatively liable for this amount of damages, defendants are left to apportion the damages among themselves. Each defendant is free to present proofs absolving itself from liability as to any particular plaintiff or as to all plaintiffs. Defendants are also free to implead any third party who they believe liable for all or part of the damages.

Plaintiffs in the case at bar bear a heavy, perhaps (as defendants contend) an insuperable, burden of proof, one made even more difficult by the number of defendants and by the length of time between the ingestion of the allegedly defective drug and the appearance of the damages allegedly caused thereby. They must establish by a preponderance of the evidence that each defendant breached its duty of care in producing the product, that the harm to each plaintiff was the result of ingestion of DES by her mother, and that one or more of the named defendants manufactured the DES so ingested.[6] Each plaintiff must carry her

---

[5] Defendants seek to distinguish prior alternative liability cases by reason of the fact that the tortious acts occurred within a brief time span. We find this argument unpersuasive. It hardly comports with the notions of fairness which underlies the adoption of joint and several liability for independent tortfeasors to hold that a tortfeasor who continues his wrongful conduct over a period of years will be absolved of responsibility for his acts as a reward for his persistence in wrongdoing.

[6] Those plaintiffs who believe they are able to identify the defen-

burden as to these defendants in order to recover. Should plaintiffs fail to carry their burden as to any or all defendants, they will suffer the consequences. We will not add to plaintiffs' burden by requiring them to apportion damages among the wrongdoers in order to recover.

In so holding, we adopt no new theory of law, despite the urging of plaintiffs that we adopt the "enterprise liability" theory of products liability.[7] We simply follow precedent established by the courts of Michigan and other states in finding that the trial court imposed too heavy a burden on plaintiffs by requiring them to plead more facts than are necessary to state a cause of action in products liability. Accord, *Sindell v Abbott Laboratories,* 85 Cal App 3d 1; 149 Cal Rptr 138 (1978). Cf. *McCrerry v Eli Lilly & Co,* 87 Cal App 3d 77; 150 Cal Rptr 730 (1978).

Reversed and remanded for further proceedings consistent with this opinion.

BRONSON, J., concurred.

A. E. MOORE, J. *(dissenting).* This is a multiple plaintiffs, drug injury, liability action. On September 17, 1974, this suit was commenced by several plaintiffs seeking individual recovery. Plaintiffs' complaint alleged that the numerous drug manufacturer defendants, jointly or collectively on an industry-wide basis termed "enterprise liability", had been negligent in their testing of a drug called

---

dant who injured them may wish to take the less perilous route of pursuing their cause of action against a sole tortfeasor rather than seeking to establish the alternative liability of all defendants. If so, they will no doubt seek to amend their pleadings accordingly. Those who have already amended their complaint to allege a sole tortfeasor may either amend to allege joint and alternative liability or stand on the most recent amendment.

[7] See Sheiner, *supra,* note 3, for a discussion of this proposed theory.

DES (synthetic estrogen, etc.), had promoted and distributed DES for the use of pregnant women with knowledge, or imputed knowledge by some of the defendants of its dangerous qualities, and had failed to warn the consumers of the dangerous side effects.

Plaintiffs claim to have been injured at conception or birth as a result of their respective mothers having ingested DES acquired under the generic drug marketing system in which defendants participated.

Plaintiffs alleged:

a. That all of the defendants named herein have manufactured pharmaceutical preparations containing dienestrol, diethylstilbestrol and diethylstilbestrol diproprionate, from the late 1940's through the early 1960's and promoted them with the intention that these drugs be prescribed by the medical profession for the purpose of preserving and/or saving the lives of the unborn children (fetuses) of the pregnant mothers to whom the drugs were administered.

b. That all of the female plaintiffs named herein were in the fetal stage when their mothers took the drug.

c. That all of the defendants actively promoted these drug preparations to the medical profession and in so doing represented to the medical profession that these drugs were both safe and effective in preserving the lives of the unborn children (the plaintiffs) of the mothers to whom the drugs were administered.

d. That in fact, there was no reasonable basis for claiming that these drug preparations were effective in preventing miscarriage of unborn children.

e. That the defendants named herein constitute all of the known manufacturers of stilbene deriva-

tives who promoted, in Michigan, said drugs to the medical profession for use in pregnancy during the period in controversy: to wit, 1947 to 1964.

f. That the promotion of the stilbene derivatives for use in pregnancy by one or more of the defendants named herein caused the injuries suffered by each of the plaintiffs.

g. That some of the plaintiffs will be unable to identify the specific defendant that manufactured the injury-producing drug.

Plaintiffs further alleged that all defendants participated in a generic promotional scheme which has effectively concealed, in many cases, the identity of any specific manufacturer, and that the defendants are jointly and severally responsible as they caused the injuries alleged in this complaint so all defendants are hereby joined as indispensable parties to this lawsuit.

The plaintiffs claim that two decades, more or less, have elapsed since ingestation of the drugs, that records have been lost, and that justice requires, because they are innocent parties, the shifting of the burden of proof to defendants as to those matters which are more available to the guilty defendants as a group of manufacturers jointly interested or participating in promotion and sale of the generic drug than to plaintiffs.

Eventually, by pleadings and by stipulation between counsel, the many plaintiffs were listed and divided into two classes: The first, those who believed they could identify the defendants responsible; and, the second, those plaintiffs who admitted they could not so identify any specific defendant responsible.

On December 23, 1974, the defendants moved for summary judgment as against the second class of plaintiffs on the basis that plaintiffs failed to state

a claim upon which relief could be granted. Specifically, the defendants contended that:

I. Partial summary judgment should be granted pursuant to GCR 1963, 117.2(1) as to all plaintiffs who alleged they were unable to identify the manufacturer of the drug, because those plaintiffs had failed to state a claim upon which relief could be granted.

II. Partial summary judgment should be granted pursuant to GCR 1963, 117.2(1) as to all plaintiffs on plaintiffs' allegation of collective industry-wide liability, since that claim attempted to circumvent the essential "manufacturer identification" element required for products liability actions and is not a cause of action cognizable under the law of Michigan.

The trial court, on March 10, 1975, dismissed the defendants' motion, without prejudice, concluding that, in view of the enormity and complexity of the cases, the plaintiffs were entitled to an opportunity for further discovery. Further discovery depositions were taken.

Thereafter, on February 1, 1977, the defendants filed their second motion for partial summary judgment, asserting that summary judgment should be granted against all plaintiffs who were still unable to identify the manufacturer of the drug which causes their injury and contending that the plaintiffs' so-called "collective liability theory" did not state a cause of action cognizable under the laws of Michigan. The motion also asserted that there was no genuine issue as to any material fact showing, or tending to show, that defendants engaged in a conspiracy or unlawful concert of action. This motion was supported by the affidavit of Dr. Jerome M. Maas.

Dr. Maas, a former employee of the defendant

Eli Lilly and Company, stated that during the relevant years of 1950-1964 over 300 manufacturers of the four types of synthetic estrogen involved in this suit were listed in standard medical references as offering these drugs for sale to pharmacies.

Plaintiffs introduced affidavits of pharmacists Howard Mordue and Louis M. Weiss, who stated that the listed defendants were prominent among those whose products were used to fill prescriptions for DES in Michigan during the period in question.

On May 16, 1977, the trial court issued its opinion. The court granted the defendants' motion for summary judgment as to the plaintiffs who could not identify the manufacturer on the ground that they failed to state a claim upon which relief could be based. The trial court also granted summary judgment as to all plaintiffs on the claim based on the so-called "collective liability" theory. On August 25, 1977, a final order granting the defendants' motion for partial summary judgment was entered.[1]

---

[1] The trial court's opinion, upon which the final order was based, provided:

"[P]laintiffs seek to hold the * * * defendants * * * responsible * * * on a theory identified alternatively as 'joint liability theory' or 'enterprise liability theory', 'synthetic drug industry liability theory', or 'industry wide liability theory'. * * * [T]he basis and concept for recovery is predicated upon the notion that all manufacturers, * * * involved here, must share equally the burden of defense and the payment of any recovery made in damages.

                    *   *   *

"The Court * * * [holds] that plaintiffs have failed as a matter of law to state a claim upon which relief may be granted.

" '* * * [I]t is necessary to show that * * * the defendant actually manufactured, compounded, or sold the drug or medicine in question. Annotation, *Liability of Manufacturer or Seller for Injury Caused by Drug or Medicine Sold*, 72 ALR2d 301, 338 (1961).

" '* * * [T]here must first be proof that the defendant produced, manufactured, sold, or was in some way responsible for the product,

On October 6, 1977, both the plaintiffs and the defendants filed separate bypass applications with the Michigan Supreme Court, which were denied. One hundred eighty-two plaintiffs now have appealed as of right.

The issues involved are these: (I) Where certain of the plaintiffs are unable to identify the particular tortfeasor(s) responsible for the injury of each plaintiff, does Michigan law allow the plaintiffs to maintain their products liability action by shifting the burden of proof (called burden of uncertainty) to the defendants? (II) Are the defendants jointly liable under a theory called "group enterprise liability" or "collective group liability" for negligently marketing an unsafe drug without adequate

*and this rule is supported in all of the cases examined in this annotation.* Annotation, *Products Liability: Necessity and Sufficiency of Identification of Defendant as Manufacturer or Seller of Product Alleged to Have Caused Injury,* 51 ALR3d 1344, 1349 (1973).

" '* * * 1 Hursh & Bailey, *American Law of Products Liability 2d,* § 1:41 (1974); accord, 63 Am Jur 2d, *Products Liability,* § 5, at 12.

" '* * * *Wetzel v Eaton Corp,* 62 F.R.D. 22 (D. Minn. 1973); *Symons v Mueller Co,* 526 F2d 13 (10th Cir. 1975).

\* \* \*

" 'In Michigan, it is clear that a products liability plaintiff must identify the product allegedly causing injury and attribute that product to the defendant manufacturer. *Smith v E. R. Squibb & Sons, Inc,* 69 Mich App 375, 245 NW2d 52 (1976); *Losinski v Ford Motor Co,* 43 Mich App 114, 118, 204 NW2d 40 [49], 52 (1972); *Cova v Harley Davidson Motor Co,* 26 Mich App 602, 609, 182 NW2d 800, 804 (1970). In *Piercefield v Remington Arms Co,* 375 Mich 85, 133 NW2d 129 (1965), the court summarized the "identification" requirement as follows:

" ' " '[A] plaintiff * * * must prove a defect attributable to the manufacturer and causal connection between that defect and the injury or damage of which he complains. When able to do that, then and only then may he recover against the manufacturer of the defective product." 375 Mich., at 99, 133 NW2d, at 135.'

\* \* \*

"Pursuant to Michigan law, * * * the failure and inability of those plaintiffs to so identify the manufacturer and to identify the alleged injury-causing product means that those plaintiffs have failed to state a claim upon which relief can be granted within the meaning of Michigan GCR 117.2(1)."

testing, if they acted in concert to market and promote the use of DES in Michigan for use during pregnancy?

I would hold that the trial court was correct in its decision. In this case, the plaintiffs are requesting three drastic major changes in Michigan law which are fallacious in theory, wrong in law, and constitute uncalled-for judicial legislation. These changes should be addressed to legislative action, not the appellate courts.

I

*Where certain of the plaintiffs are unable to identify the particular tortfeasor(s) responsible for the injury of each plaintiff, does Michigan law allow the plaintiffs to maintain their products liability action by shifting the burden of proof (called burden of uncertainty) to the defendants?*

Plaintiffs contend: that the drug companies promoted DES by directing their advertising and promotional efforts at the doctors and pharamacists rather than at the ultimate consumers; that DES was sold as a generic drug so the choice of manufacturer resided with the pharmacist; that even the pharmacists may have been unaware of the identity of the actual manufacturer, since drugs could be labeled with the name of the repackager or distributor; that even those pharmacists who knew the identity of the manufacturer no longer have records of the drugs dispensed to the plaintiffs' mothers; that such marketing system was far different from that usually present in a products liability action which appeals to the ultimate consumer rather than to intermediaries; and that this justifies shifting the "burden of uncertainty" to the tortfeasors.

Plaintiffs argue: that where uncertainty exists as to the amount of damages or the individual responsibility of each tortfeasor, the risk of uncertainty shifts to the defendant, especially where his wrong has helped engender the confusion; that this doctrine of shifting the risk of uncertainty has been used in anti-trust litigation, in multiple automobile collisions, in hunting accident cases, and in air and water pollution cases; that it is unfair to let the wrongdoers go free just because the injured party cannot prove the specific share of harm done by each of them; and that case law requires shifting the burden even where there is no "conscious concert" of action on the part of the tortfeasors if the injured parties cannot sustain the burden of proof.

Defendants contend: that the trial court correctly decided the defendants' motion for summary judgment as to those plaintiffs who were unable to identify the alleged injury-causing drug or its manufacturer; that it is fundamental in any Michigan products liability suit that the plaintiff be able to identify the particular product involved and the manufacturer or seller of this product; and that a plaintiff must prove a defect, negligence or a warranty breach attributable to at least one or more specific manufacturers and causal connection between that defect, negligence or breach of warranty and the injury or damage of which he complains in order to recover from the manufacturer or a group of manufacturers of the defective product.

Plaintiffs' contentions are untenable because:

First, they call for strict liability in product liability cases, namely, without proof of fault, which is not now Michigan law.

Second, they call for group liability of parties

who are unrelated except by their enterprise, business, or profession, but who are not necessarily joint tortfeasors, without proof of fault. This is not Michigan law.

Third, they call for a reversal of many well established decisions of Michigan's tort law presently requiring: (a) identification of the defendant (b) proof of tortious activity or behavior by the defendant and (c) proof of a causal connection resulting in damages.

It should always be remembered that stability of law is a basic, precious judicial necessity, without which confusion reigns. Judicial legislation exceeds judicial authority and does great injury to our "separation of powers" doctrine.

As to the plaintiffs' contentions, I conclude as follows: There are only two theories of recovery for product liability which are recognized in Michigan: negligence and warranty. *Johnson v Chrysler Corp,* 74 Mich App 532; 254 NW2d 569 (1977), *lv den* 400 Mich 861 (1977). Strict liability is not recognized. Plaintiff must prove that the defendant has supplied a defective product, and that this defect has caused injury to the plaintiff.

Regardless of the theory upon which liability is predicated, whether negligence or breach of warranty, there must first be proof that the defendant produced, manufactured, sold, or was in some way responsible for the product. The matter of identification is inherent in every products liability action. 51 ALR3d 1344, 1349.

In a similar case, *Gray v United States,* 445 F Supp 337, 338 (SD Texas, 1978), the plaintiff sued Eli Lilly and Company and the government for her injuries caused by the DES ingested by her mother during pregnancy. The Texas district court granted summary judgment in favor of the defen-

dant drug company because the plaintiff was unable to identify the manufacturer of the DES taken by her mother.

In *Summers v Tice,* 33 Cal 2d 80; 199 P2d 1; 5 ALR2d 91 (1948), the plaintiff was struck in the eye by a shotgun pellet when two defendants almost simultaneously fired their guns in his direction. The firing of the guns was tortious. There was no evidence as to which defendant fired the shot which injured the plaintiff. There, the Court decided that the defendants should not be exonerated from liability for their negligence, whether it was deemed that they acted independently or in concert. The Court held that *under the circumstances presented,* the defendants were *jointly and severally liable,* and the burden of proof shifted to each of the defendants to absolve himself of liability, so the plaintiff was relieved of the duty of apportioning his injury to either one of the defendants.

In *Meier v Holt,* 347 Mich 430; 80 NW2d 207 (1956), the plaintiff automobile driver could not prove which portion of his injury was caused by each of the two defendants' automobiles and the Court stated that the *burden of apportioning the damages* should be shifted to the defendants.

In these two cases, the plaintiff's injury was caused by one of several persons, the plaintiff was unable to identify by any available method which defendant caused the injury, *but the plaintiff established that all defendants were at fault.* Rather than deny him recovery altogether due to the uncertainty of the situation, the Court held that it was more equitable to let the defendants bear the "burden of the uncertainty", rather than preclude an innocent plaintiff from a recovery. A similar conclusion was reached in the collision case of

*Maddux v Donaldson,* 362 Mich 425; 108 NW2d 33
(1961).

In *Oakwood Homeowners Assn, Inc v Ford Motor Co,* 77 Mich App 197; 258 NW2d 475 (1977), *lv den* 402 Mich 847 (1978), an air pollution case where it was proven that one or more of the defendants caused the pollution but where the plaintiffs did not prove injury and liability as to specific tortfeasors, it was held that the law shifts to defendants the burden of proof as to which tortfeasors were responsible and to what degree, *after proof of liability by plaintiffs.*

However, these cases which shift the burden of proof to the defendant do not involve the problem of identifying the party who is liable, but rather, they involve the apportionment of damages after liability is proven. Each defendant in those Michigan cases did some wrongful act toward the plaintiffs so liability was first determined. The defendants had the burden only of proving the *specific proportion of the injury damages* for which they were liable. The courts decided that it would be easier and more equitable, *after liability has been proven,* for the defendants to determine their own *degree of culpability,* rather than to deny the plaintiff a recovery. This is the law in Michigan.

In the case at bar, the basic issue has to do *with establishing liability* by identifying the particular wrongdoer(s), rather than with apportioning the damages among the tortfeasors. None of these Michigan cases has shifted the burden of proving "some" negligence to some of the defendants. The only "shifting" allowed has been with respect to apportionment of damages after negligence has been proven.

The only possible Michigan support for shifting of the burden of proof is the language of *Snider v*

*Bob Thibodeau Ford, Inc,* 42 Mich App 708, 718;
202 NW2d 727 (1972):

"True, the burden of proving which of two possible
wrongdoers is responsible is generally assigned to the
plaintiff. The courts have, however, shown a willingness
to consider special circumstances when allocating the
burden of proof. This accords with the general view
that the placing of that burden is 'merely a question of
policy and fairness based on experience in the different
situations'."

However, this language was merely dicta.

The Michigan case law is clear that plaintiff
must prove: 1) that the defendant was the manu-
facturer, 2) that the product was defective, and 3)
that injury resulted therefrom. *Smith v E R
Squibb & Sons, Inc,* 69 Mich App 375; 245 NW2d
52 (1976), *Piercefield v Remington Arms Co, Inc,*
375 Mich 85; 133 NW2d 129 (1965), *Cova v Harley
Davidson Motor Co,* 26 Mich App 602; 182 NW2d
800 (1970).

Michigan case law as to successive or near si-
multaneous tortfeasors is that each tortfeasor is
responsible for his own wrong, taking the injured
person as found. However, when proof of harm is
uncertain, the defendants are both liable jointly
and severally for the total wrong unless the jury
finds otherwise based upon the proofs. *Snider,
supra, Meier v Holt, supra, Maddux v Donaldson,
supra.*

All Michigan cases require plaintiffs to prove
liability.

Restatement, Torts 2d, § 876, p 315 states:

"For harm resulting to a third person from the
tortious conduct of another, one is subject to liability if
he

"(a) does a tortious act in concert with the other or pursuant to a common design with him, or

"(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

"(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person."

I conclude the shifting of proofs is only as to degree or percent of damages, after, and only after, liability of at least one defendant acting in concert has been proven.

## II

*Are the defendants jointly liable under a theory called "group enterprise liability" or "collective group liability" for negligently marketing an unsafe drug without adequate testing, if they acted in concert to market and promote the use of DES in Michigan for use during pregnancy?*

Appellants argue that Michigan should adopt the "enterprise liability" theory to hold the entire group of defendants who marketed DES without adequate testing liable for the injuries caused by the drugs without proof of fault of any one defendant. This doctrine, which was recognized in a series of blasting cap cases, does not require proof of a formal joint venture or a conspiracy. Joint control may be established by proof of an explicit agreement, by proof of parallel behavior supporting an inference of a tacit agreement or cooperation, or by proof of independent adherence to an industry-wide standard or custom. The difficulty with this enterprise liability theory lies in the lack of proof of real responsibility of at least one party

defendant. Some liability of one defendant must precede drawing in others. For instance, if none is identified, why should we not conclude none are liable? Further, to shift proof of damages to defendants requires proof of some liability, and this means identification of at least one party at fault; otherwise, proof of damage becomes the substitute for proof of liability. When no one defendant-manufacturer can be identified, the existence of industry-wide standards or practices may not be substituted to support a finding of fault. The concept of "enterprise liability", although not essentially different from that of *Summers v Tice, supra,* is a broader remedy than simply shifting the burden of uncertainty of damage allocation to ascertained tortfeasors. We cannot promiscuously make an entire industry liable without some liability being first established against someone.

There is no Michigan precedent to support the plaintiffs' theory of joint or collective industry-wide liability. The activities alleged by the plaintiffs in their fourteenth amended complaint fall short of setting forth a cause of action for conspiracy, and plaintiffs' counsel indicated during oral argument that the conspiracy claims had been abandoned. Any concerted action alleged by the plaintiffs was only undertaken by defendants pursuant to the mandate and requirements of Federal law and FDA procedures. Any company which manufactures DES must use the same formula and official name or be subject to penalties under 21 USC 352(e).

In the case at bar, identification information certainly did exist at one time, and its present unavailability is not due to any action by the defendants herein; but rather, the unavailability of that information is due to the passage of time.

To accept the plaintiffs' theory of enterprise liability would result in a penalty for conduct which was undertaken in compliance with the Federal laws concerning prescription drugs.

The "strict liability" rule is not recognized in Michigan. Instead, liability must be shown to arise from warranty, express or implied, or from negligence.

Michigan law does not support "collective liability." *The fact of injury alone does not establish a legal duty by society,* running to the injured party, *to provide compensation.* Every injury is not legally compensable. Injury alone does not justify imposing liability on one manufacturer for injuries caused by another manufacturer of the same or similar product.

Even where there is an otherwise constitutionally sound policy established legislatively, like no-fault insurance, the constitutional validity fails unless there is reasonableness and insurable or actionable protection available to the group. There must be some fault directly proven against the manufacturer, or some activity done or position taken to create liability, even through a member of a group.

To say it another way, absent legislative action and legal responsibility springing therefrom, one may not be obligated for the fault of a fellow lawyer, or doctor, or engineer, or a drug manufacturer. Both due process and equal protection so protects all of us. The collective liability theory violates due process and equal protection guarantees of the Constitution. The courts cannot create a remedy which is in violation of constitutional law.

The naked application of the collective liability theory would result in a taking of the property of

all of the defendants in order to pay for harm which may have been caused by the conduct of only one of the defendants or even by one who is not a party to this lawsuit, over whom the defendants have no control or with whom they have no meaningful contact. Due process requires that a state action which deprives a person of his property must have a rational basis, it must not be arbitrary. Naked application of collective liability, by relieving the plaintiffs of the burden of proving that these defendants or certain specific defendants caused or participated in causing the harm, would also deny to certain of the defendants equal protection.

The trial court's grant of summary judgment should be affirmed in favor of all non-identified defendants as against those plaintiffs who have alleged that they cannot identify the manufacturer of the drug which allegedly caused their injury.

The trial court properly interpreted Michigan products liability law, properly declined to adopt the "enterprise liability" theory and properly dismissed the suits by the plaintiffs who could not specifically identify the responsible pharmaceutical defendant.

The decision of the trial court should be affirmed.